ARNOLD and others *v.* GILBERT and others.

A TESTATOR, having a very large real estate, after some minor bequests in his will, gave to his wife for life, in lieu of dower, one-third of the net rents of his real estate, so long as it should remain unsold. He gave to each of his five sons, five thousand dollars, payable out of the sales of his real or personal estate; the legacies to two of whom, G. and W., were to be invested in stock or on mortgage, the interest paid to them for life respectively, and after their deaths to their respective children, and if either should die without a child living, his legacy was to go to the three other sons and the survivor of G. and W., and the latter's share to be placed in the trusts provided subsequently. To another son, E. he gave the income of three thousand dollars for his life; the fund to be raised out of his real and personal estate; and after his death to be divided among the five other sons. To the widow of a deceased son, T., he gave the interest of ten thousand dollars, during her widowhood, the fund to be raised from sales of his real estate and invested, and afterwards to be divided among T.'s three daughters. To two of those daughters, there was a further legacy of a thousand dollars each.

All the residue of his estate, the testator devised and gave to his executors in trust, to receive the rents thereof, and immediately after his death to sell enough of the real estate to pay his debts; to pay one-third of the net rents to his wife; to pay the interest on the respective legacies, and the annuity to E., out of the rents; that they should and might, from time to time, proceed to sell any part or all of his real estate; the sales to be made with as little delay as the good of the estate would permit, to the extent of investing the several funds, and paying the legacies before provided; and one-third of all sales to be invested, and the interest paid to his wife for life. And in further trust, that upon a sale and final distribution, there should be an estimate of all remaining, and the surplus, including the fund of which E. was to receive the income, and the funds for the use of his

wife for life, was to be distributed whenever, as soon, and as often as could be done, to the close of his whole estate and its concerns. Of this surplus, one seventh was to go to each of three sons absolutely; another seventh to his son G., and another to his son W. The two latter were to be invested, and the interest paid to each for life, and at the death of either, to their respective children: But if either died without children living, the amounts coming to them, or either of them, were to revert back to and become an integral part of the testator's estate, and be divided between the three sons first named and the survivor of G. and W., or to the children of the latter taking a parent's share: And if one of G. and W. survived the other, his interest was to be limited to the survivor for life, and after his death to be divided as before provided. As to the other two-sevenths of the surplus, the interest of one was to be paid to the testator's daughter H., and of the other to his daughter F., so long as they respectively remained widows; upon their death or re-marriage, respectively, F.'s share was to go to her lawful heirs as in cases of intestacy; and the share of H. was to revert back and merge in his estate, and become part thereof, and be divided between his five sons and his daughter F.; but F.'s part was to go to her use while a widow only, and on her death or re-marriage, was to go to her children or grand-children, as before provided as to her seventh; and the portions of the sons, G. and W., in the seventh part of H., were to be under the same limitations and uses as before provided in respect of their several seventh parts of the surplus estate. The will also contained powers to lease lots for terms of years, to repair and rebuild, and to exchange gores and irregular pieces of land. In a suit by the children of the testator's son T., to set aside the will, on the ground that the trusts were illegal;

*Held,* 1. That the provision for the widow of the testator in the real estate, under the will, was to be regarded as a trust of real estate at the death of the testator, and not to be deemed as converted into personalty.

2. That the shares given to F., G. and W., arising from the seventh part of H., in the third of the real estate from which the widow was to receive her income, were inalienable during three lives in being, and the trusts thereof were void.

3. The same was held of the limitations of the two seventh parts of G. and W. in the same third part.

*Held* further, that the testator did not intend a general distribution, until after the death of both his widow and his son E.; during whose lives, the power of alienation and the absolute ownership were therefore suspended; wherefore,

1. The whole of the seventh designed for H., that for F., and the two sevenths for G. and W., were each and all suspended for three or more lives in being, and were all void trusts.

2. That the trusts of the will, being so far void as to overturn the main design of the testator, the overthrow of the residue necessarily followed; even if the latter were not involved in the fate of the void trust devise to the executors.

3. That the gift to the widow of T. was valid; but the daughters of T. must relinquish their legacies, on coming in as heirs at law.

4. That the legacies of five thousand dollars to the five sons, must fail for the same cause; and also, because they were dependent on the void trusts of the will, and those to G. and W. formed a part of the trusts declared void.

5. That being void as express trusts, the devise could not be maintained as a power in trust, in respect of those legacies.

6. That the acts of the trustees under the will must be confirmed, on avoiding the trusts in behalf of the complainants.

Argued, Sept. 11, Nov. 6, Dec. 2, 3 and 20, 1845, and Feb. 25, 1846; Decided May 23, 1846.

THE bill in this cause was filed on the fourteenth day of February, 1840, by Lemuel Arnold and Caroline his wife, Charlotte Gilbert, Jane Gilbert and William Gilbert, against Garret Gilbert, Clinton Gilbert, Edward P. Heyer, and Silvanus Miller, surviving executors and trustees of the last will and testament of William W. Gilbert, deceased, and Betsey Gilbert, David Gilbert, Clinton Gilbert, Warren Gilbert, George W. Gilbert, Garret Gilbert, Elsey Fish, Franklin Y. Vail and Catharine Matilda his wife, and Edward H. Owen, Eleazer Hand and Alexander N. Gunn, as assignees of Garret Gilbert; to set aside the trusts of the will of W. W. Gilbert, and to have an account of his real and personal estate.

The bill set forth that William W. Gilbert, late of the city of New York, deceased, on the 4th day of January, 1832, made and published his last will and testament, in the words and figures following, that is to say :

"In the name of God, Amen. I, William W. Gilbert, of the city of New York, gentleman, do, by these presents, make, publish and declare my last will and testament, as follows :

1. First.—I commit my immortal soul to Almighty God, and hope for mercy and salvation through the merits of my blessed Redeemer, Jesus Christ.

2. Item.—I will and direct my executors, hereinafter named, to pay all my debts, of every nature, character and description, as soon after my decease as practicable.

3. Item.—I give, devise and bequeath unto my beloved wife, Betsey Gilbert, all my household furniture, plate, carriages, and horses, together with every other article and thing belonging to my household establishment, in and about the house and residence where I now live, saving and excepting a writing desk, or secretary, which I give to my son, Garret Gilbert, now standing

in my front parlor, to have and hold to my said wife and son, respectively, absolutely, and forever.

4. Item.—I give, devise and bequeath unto my said wife, for and during, and for the full end and term of her natural life, the one-third part of the rents, issues and profits of my real estate, (deducting the expenses of collection, insurance, repairs, and all the other customary and incidental charges ;) the said one-third part to be paid to my said wife, so long as my real estate shall remain unsold, when her thirds are to be paid, according to the provisions hereinafter named, of and concerning the same.

5. Item.—I give and devise the mansion, or dwelling house, in which I now reside, to my said wife, for one year after my decease, free from all rent and charge; the above bequests of personal estate, and the one-third of the rents, issues and profits of my real estate while unsold, and the further provisions hereinafter contained, for and in behalf of my wife, are declared to be in full bar of and in lieu of all dower of, in and to my real estate, and of, in and to any part or parcel thereof.

6. Item.—I give, devise and bequeath unto each and every one of my five sons, to wit : Garret Gilbert, David Gilbert, Clinton Gilbert, Warren Gilbert, and George W. Gilbert, the sum of five thousand dollars, payable out of the sales of real or personal estate, as hereinafter directed, that is to say : to Garret Gilbert, David Gilbert and Clinton Gilbert, each their respective legacies of five thousand dollars, as soon as my executors are enabled to pay the same from the funds of my estate, under the provisions of this my will ; and that the legacies of five thousand dollars, given to each of my two sons, Warren Gilbert and George W. Gilbert, be invested in some public stock, or on bond secured by mortgage ; the interest of which shall be paid to them, respectively, as received, for and during their natural lives, and after their or either of their deaths, the said sum shall go to the lawful child or children, (if there be such,) of my said sons, Warren and George W. Gilbert; but, if either or both of them, should die without any lawful child or children then living, then his or their said legacy shall go to and belong to my sons, Garret, David and Clinton Gilbert, and the survivor of said George W. or Warren, or amongst the child or children of the one dead : the

child or children to take the part of the parent so deceased, and to be placed in trusts, herein or hereafter provided of and concerning the bequests made to them, respectively, and I give and devise the same accordingly.

7. Item.—I give, devise and bequeath the interest or income of the sum of three thousand dollars, to my son, Ephraim Gilbert, for and during and for the full end and term of his natural life, to be paid quarter-yearly ; the said amount or sum to be raised for that purpose from my personal and real estate ; and until so raised, the sum of two hundred and ten dollars is to be paid to my said son, Ephraim Gilbert, quarter yearly, by my executors, hereinafter named ; and after the death of my said son, Ephraim, then the said sum of three thousand dollars is to be equally divided between my five sons, Garret, David, Clinton, Warren, and George W. Gilbert, their executors, administrators and assigns, share and share alike.

8. Item.—I give, devise and bequeath unto my daughter-in-law, Jane Gilbert, the widow of my deceased son, Thomas W. Gilbert, for and during the time she shall remain a widow, and until her re-marriage, and no longer, the yearly interest of the sum of ten thousand dollars ; which said sum is to be raised for that purpose from the sales of my real estate, and loaned at interest on bond secured by mortgage, or invested in some safe and productive stock ; and from and after the death or re-marriage of my said daughter-in-law, the principal to go to and be equally divided between my grand-daughters, Antoinette, Caroline and Charlotte Gilbert, the three daughters of my late son, Thomas W. Gilbert.

9. And in addition to this sum of ten thousand dollars, given to my three grand-daughters last mentioned, I give, devise and bequeath unto my two grand-daughters, Caroline Gilbert and Charlotte Gilbert, each the sum of one thousand dollars ; this last mentioned sum is given to my two said grand-daughters, for their affectionate and tender care during a protracted sickness, manifested by both of them toward their aged grand-parent, payable as soon as practicable ; but, should either of said grand-daughters die leaving no child or children, and before marriage, then the part or portion of the said sum of ten thousand dollars of the

one so dying, shall go to and belong to her surviving sister or sisters, or unto her or their child or children, (if any,) and the child or children to take the parent's part only, and I give and devise the same accordingly.

10. All the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever the same may be, I give, devise and bequeath unto my two sons, Garret Gilbert and Clinton Gilbert, and Edward P. Heyer, Thomas Stokes and Silvanus Miller, or unto such of them as shall undertake the burden of executing this my will; and to whom letters testamentary shall be duly granted; as joint tenants, and not as tenants in common, and to the survivors or survivor of such of them; but upon the special confidence and trust of and concerning the same, as hereinafter set forth and expressed, or meant and intended so to be, that is to say :

11. Upon the trusts to take, have, hold, use, and possess, all my real estate whatsoever and wheresoever, from and immediately after my death, (excepting my mansion, or dwelling house,) and that, also, after my wife shall have possessed it as above provided; and to receive the rents, issues and profits thereof; and from and immediately after my death to sell any part of my real estate which may be necessary to pay my debts ; and from the rents, issues and profits of my real estate, and until it shall be sold, I give, devise and bequeath unto my beloved wife, the one-third part of the net amount of all the rents, issues and profits, deducting losses or expenses of collection, (if any there should be ;) and upon this further trust, that my said executors, as joint tenants as aforesaid, pay unto the respective legatees the interest on their respective legacies, out of the rents, issues and profits of my real estate, to commence with such interest within six months after my decease ; and if the same shall not be sufficient to pay such interest and the annuity to my said son, Ephraim, then all the legatees are to be paid rateably and in proportion to the whole amount devised to be so divided.

12. And upon this further trust, that my executors, or the joint tenants aforesaid, shall and may, from time to time, proceed to sell any part of or all my real estate, either at private sale or at public auction, and to give, grant and convey the same in fee

Arnold v. Gilbert.

simple, by all proper and lawful conveyances to the purchasers thereof, so as to protect the purchaser or purchasers fully in the estate so conveyed to them under this my will, in all and every case, both at law and in equity.

13. And upon every such sale, if it can be effected, I recommend that at least one-third of the consideration money be secured thereon by bond and mortgage, this being my wife's right in lieu of her dower as aforesaid ; so, that if she should live until my real estate shall all be sold, her interest may be safely placed and her income secure.

14. And further, that the sales of my real estate shall be made with a view to invest the sums herein required, and to pay the legacies herein devised, with as little delay as can be, always having a regard for the interest of my whole estate, as well as for the provisions made for particular legatees, it being my will that the pecuniary or other devises herein made shall be carried into effect and consummated from the funds resulting from or arising out of my real estate.

15. And in further trust, that upon a sale and final distribution of my estate, that there shall be an estimate, an account taken of the whole remaining, and the surplus, including the sum placed at interest for my son, Ephraim, for his support during his life, as well as the funds for the use of my wife during her life, be divided and distributed in the following manner, whenever, as soon, and as often as can be done, to the close and settlement of my whole estate and its concerns, that is to say : one-seventh part thereof to my son, Garret Gilbert ; the one-seventh part thereof to my son, David Gilbert ; the one-seventh part thereof to my son, Clinton Gilbert ; the one-seventh part thereof to my son George W. Gilbert ; the one-seventh part thereof to my son, Warren Gilbert.

16. And to each of my daughters, Catharine Hunt and Elsey Fish, the interest of the one-seventh part each during the time they shall respectively remain single and unmarried, and after such re-marriage or death of them, or either of them, then the sums, the interest of which they may have been entitled to, shall be disposed of as follows, that is to say : the part or portion given as aforesaid to my daughter, Elsey Fish, shall go to and

belong to her lawful heirs, according to the laws of the state of New York in cases of intestacy, as applicable to my said daughter's children and heirs, as if she had an absolute estate in this bequest, given to her for life or singleness, as aforesaid.

17. The part or portion given for the use of my daughter, Catharine Hunt, shall, upon her re-marriage or death, revert back and merge into my estate, so that it shall become a part and parcel thereof, and be equally divided between my said sons, Garret, David, Clinton, Warren, and George W. Gilbert, and my daughter, Elsey Fish ; her part, however, to be given to her as for life or re-marriage, as aforesaid ; and on her death or re-marriage to go to her children or grand-children, as the case may be, according to law, as provided of and concerning the one-seventh given to her as aforesaid ; and the part or portion which may so arise as regards or effects my sons, George W. and Warren Gilbert, shall be placed under the same trusts, uses and limitations, provided and directed of and concerning the trust, use and limitation of their respective one-seventh parts of my estate, in all and every manner and way whatever.

18. Excepting five thousand dollars out of the part given to my daughter, Catharine Hunt, as aforesaid ; which said sum my executors are to vest for the benefit of her daughter, Matilda Vail ; the interest whereof she shall receive for her sole and separate use, and on her own receipt or order during her natural life, and after her death the principal shall go to her heirs at law ; the whole to be without the control of her husband at all times.

19. And as it regards or relates to the part or portion given to my sons, George W. Gilbert and Warren Gilbert, that the same be loaned out or invested, as aforesaid, and the interest to be paid to them yearly, or as often as received ; and after his or their decease, to his or their child or children, as the case may be. But, in the event of either or both dying without children then living, the said amounts coming to them, or either of them, shall revert back to and become an integral part of my estate, and be equally divided, share and share alike, between my sons, Garret, David, Clinton, and the survivor of my two sons, George W. and Warren, or to the child and children, if he or they leave such. Such child or children to take a parent's part of this

fund, (if there should be such ;) and if one of my said last mentioned sons should survive the other, then his interest is to be limited to his use for life, and to be divided after his death, as is provided of and concerning the one-seventh part of my residuary estate, so given and limited in this my will.

20. And further, that my estate, of every kind, character and description, shall be vested in and be the lawful property and estate of the joint-tenants and executors aforesaid, or in such of them as shall have letters testamentary granted to them, or the survivors or survivor of them, as joint-tenants, to the full extent of the law, for all and every purpose and intent to fulfil the provisions of this my will, and of all trusts, uses, limitations, and conditions arising therefrom ; and that full power and lawful authority to enable them to execute the same to all and every interest, and meant and intended, is hereby given and conferred, as fully and amply as if the powers and authority were more fully, particularly and at large, set forth and expressed.

21. And further, that my executors and joint-tenants as aforesaid, have full right and lawful authority to lease out lots for a term of years, upon such covenants and conditions, with such rents reserved, as they may deem reasonable; to insure any and all houses, stores, messuages, hereditaments, or other buildings belonging to my estate, against loss or damage by fire ; and out of the money received by such loss by fire, (if any there should be,) to repair or rebuild the same, according to their discretion. And I authorize and empower my executors to compromise any doubtful, desperate, or suspicious debts, due and owing to my estate, and to submit all disputes and controversies to arbitration, or to one or more referees : and generally, I hereby give them full power and authority in all these respects, as they may arise in the fulfilment of their duties.

22. Item.—I do authorize them, from time to time, to appoint an agent or collector for my estate, at a stipulated salary or defined commission for his services, (who may be selected from amongst themselves;) and that my executors shall not be answerable for any improper conduct or malversation of such agent or collector, nor shall one executor be answerable for the

Arnold v. Gilbert.

acts or omissions of the other, unless from wilful negligence or fraud.

23. And I also give and grant unto my executors as aforesaid, full power to liquidate, arrange and pay all assessments or other impositions by the corporation of the city of New York on any part of my real estate, and to act in the best manner in those cases, which, in their judgment and discretion, shall appear to be beneficial or necessary, and whereof, by the ordinances of the, corporation already made, and which may be hereafter made, my lots and grounds may be irregular and so situated and formed, that it may be necessary to sell, purchase or exchange slips, or gores, or other pieces of ground for the general benefit of my estate, to enable my executors to manage and benefit my estate in these cases, and I do hereby authorize them to buy, sell or exchange, with all persons, proprietors or agents for them, and to give full deeds of conveyance in the law necessary and lawful in the premises, and to receive conveyances for any premises purchased, in trusts for the general purposes and objects of this my will, and to dispose thereof when necessary, by proper deeds of conveyance to the purchaser, in all and every case whatever.

24. And lastly, I do hereby nominate, constitute and appoint my two sons, Garret Gilbert and Clinton Gilbert, and my friends, Edward P. Heyer, Thomas Stokes and Silvanus Miller, Esquires, executors of this my last will and testament; whom I do hereby appoint the guardians of my infant children, and dispose of the custody and tuition of such child to the said guardians during their minority, according to law; hereby revoking and annulling all former or other wills by me at any time made. In witness whereof, I have hereunto set my hand and seal, this fourth day of January, in the year of our Lord one thousand eight hundred and thirty-two.

WM. W. GILBERT. [L. S.]

Signed, sealed, published, and declared by the testator to be his last will and testament, in the presence of us, who, at his request, and in his presence, and in the presence of each other, have subscribed our names as witnesses; J. R. Satterlee, residing at 394 Hudson street, city of New York; Morris Miller David-

son, residing No. 10 Cherry street, city of New York; Abr'm. Miller, residing No. 434 Hudson street, New York."

The bill further stated, that the testator, William W. Gilbert, departed this life on the 14th day of February, 1832, without having revoked, or in any manner altered this last will and testament, leaving a large real and personal estate: the real estate being situated principally in the city of New York, and the personal estate, consisting of household furniture and other articles, in and about the premises occupied by him, and of notes, bonds and accounts against sundry persons and incorporated companies, of which an inventory had been filed by the executors thereinafter named, in the office of the surrogate of the county of New York.

That the will was, on the 6th day of April, 1832, proved in due form of law, before James Campbell, surrogate of the county of New York, both as a will of real and personal estate, and letters testamentary were issued on the 7th day of May, 1832, in due form of law, by the surrogate, to Clinton Gilbert, Garret Gilbert, Edward P. Heyer, Thomas Stokes, and Silvanus Miller, in the will named; who assumed upon themselves the burden of the execution thereof, and of the trusts created or pretended to be created, in and by such last will and testament.

That the bequest to his wife, Betsey Gilbert, of his household furniture, plate, carriages, and horses, together with every other article and thing belonging to his household establishment, except as in the will mentioned, was without any provision or limitation to defeat or make void the same; but, the devise to her of one-third part of the rents, issues and profits of his real estate, (deducting expenses of collection, insurance, repairs, and all other customary and incidental charges,) was defeasible and void, upon the executors selling the real estate; and the devise to Mrs. Betsey Gilbert, after such sale of the real estate, was involved in and formed a part of, and depended upon the trusts in and by the will attempted to be created, and afterwards more particularly mentioned in the bill.

That Betsey Gilbert accepted the devises and bequests in the

will in lieu of her dower, and had ever since the death of the testator, continued to receive and enjoy the same.

That the testator died seized of a large real estate, consisting of several hundred building lots in the city of New York, located in thriving and well settled parts thereof, worth several hundred thousand dollars; but these complainants were not informed and could not state the particulars of the real estate, and they prayed from the defendants a full and complete disclosure and discovery of all and every part of the real estate; where situated, how described, and by what title the testator held the same, whether in fee or otherwise.

That Thomas Stokes died sometime in the year 1833; but at what time, and whether before or after the sales of the real estate thereinafter mentioned, and whether he united in the sales or any of them, the complainants were not informed, and they prayed a full discovery from the defendants.

That the defendants, Garret Gilbert, Clinton Gilbert, Edward P. Heyer, and Silvanus Miller, in the will named, after they had taken upon themselves the burden of the execution of the will, and of the trusts therein mentioned, proceeded to sell the real estate, or some part thereof, whereof the testator died seized; and for that purpose had and held sundry public sales thereof during the year 1833, or at some other times, and realized out of said sales a large amount of money, amounting to nearly five hundred thousand dollars, as the complainants were informed; and they prayed from the executors and trustees, a full disclosure and discovery of the sales, and the amounts and of all the particulars, sums and dates thereof.

That a considerable portion of the real estate whereof the testator died seized still remained unsold, in the hands and under the control of the trustees and executors; and that the trustees and executors had also in their hands and possession, and under their control, a large amount of money, or assets, mortgages, stock or other investments, belonging to the estate; amounting, as the bill stated, to nearly three hundred thousand dollars; but of the particulars, nature, condition, and description of the real estate so remaining unsold, and of the funds, assets or investments then held by the trustees, the complainants were not informed and

prayed from the trustees and executors, a full and complete disclosure and discovery.

That William W. Gilbert, deceased, left him surviving as his heirs at law, the following named persons, to wit: his sons, Garret Gilbert, David Gilbert, Clinton Gilbert, Warren Gilbert, George W. Gilbert, and Ephraim Gilbert, all of the city of New York, aforesaid; Antoinette Gilbert, of Ogdensburgh, in this state, and the complainants, Caroline Arnold and Charlotte Gilbert, his grand-daughters, and daughters of his deceased son, Thomas W. Gilbert; Catharine Hunt, his daughter, the widow of Andrew Hunt; and Elsey Fish, his daughter, the widow of Whitehead Fish, deceased; and William Gilbert, the son of Thomas W. Gilbert, deceased.

(The bill then contained allegations that the will was obtained from the testator by importunity and undue influence, and when he was incapable by reason of his great age, (87 years,) and his bodily and mental infirmities, to make a valid will; and that he was not of sound and disposing mind and memory, when he executed the will in question.)

The bill then stated, that by the will it is directed and declared, that the trustees and executors therein named, should receive the rents, issues and profits of, and interest accruing from his estate, and pay therefrom, to each of the testator's daughters, Catharine Hunt and Elsey Fish, the interest of one-seventh part of the rest, residue and remainder of the testator's estate; such rest, residue and remainder, being by far, the greater portion of his whole estate; while they should remain single and unmarried. And the bill charged, that this devise created a trust to receive the rents, issues and profits of real estate, and pay them over to the *cestuis que trust*, which is contrary to the laws of this state, and absolutely void.

That the part or portion given for the use of the testator's daughter, Catharine Hunt, was, by the will, directed, upon her remarriage or death, to revert back and merge into his estate, so that it should become a part and parcel thereof, and be equally divided between his sons, Garret, David, Clinton, Warren, and George, and his daughter, Elsey Fish; and, as it regards the part or portion thereof given to George and Warren, it was by

the will further directed, that the interest thereof should be paid to them during their natural lives; and, in the event of either or both dying without children then living, the same should revert back to and become an integral part of the testator's estate, and be equally divided, share and share alike, between his sons Garret, David, Clinton, and the survivor of George and Warren; and, if one of his sons last mentioned should survive the other, then his interest to be limited to the use of the survivor for life.

And the bill charged that the power of alienation of the one-seventh part of the residuum, so given for the use of Catharine Hunt, or of some portion thereof, was by those provisions of the will, suspended during the lives of three persons in being, to wit: during the lives of Catharine Hunt, George W. and Warren Gilbert, and the longest liver of them; and was contrary to the laws of this state, and therefore void.

That the trust in and by the will created for the benefit of George W. and Warren Gilbert, was a trust for the trustees to receive the rents, issues and profits of the real estate of the testator, and the interest from the avails thereof, and to pay the same to George W. and Warren: and that such trust was contrary to the laws of this state, and therefore void. And that in consequence of the premises, the estate whereof William W. Gilbert died seized, descended to his heirs at law and next of kin.

The bill further stated, that William Gilbert, the son of Thomas W. Gilbert, deceased, and one of the heirs at law of William W. Gilbert, deceased, had executed to the complainants, Jane Gilbert and Lemuel Arnold, a deed of trust of all his estate, real and personal, and they have accepted of ' such trust, and were seized as his trustees of all his estate and interest in and to the estate whereof the testator died seized. And that Antoinette, the daughter of Thomas W. Gilbert, and grand-daughter of the testator, died on or about August, 1838, leaving no child or children her surviving. And that Ephraim Gilbert, one of the sons of the testator, died since the death of the testator, leaving no child or children him surviving.

That Garret Gilbert, after the death of the testator, and in or about the year 1838, executed a deed of trust to Edward H. Owen, Alexander N. Gunn and Eleazer Hand, of the city of

New York, for the benefit of his creditors, of all his estate, real and personal; which three trustees have accepted of the trust, and were, or had been, seised of the real estate whereof Garret Gilbert was the owner, at the time of executing such deed.

That before the time of the intermarriage of the complainants, Lemuel Arnold and Caroline Arnold, a deed of marriage settlement was executed between them, whereby all the estate of the latter was granted and conveyed to Jane Gilbert and Charlotte Gilbert in trust, for the separate use and benefit of Caroline, and was held by them as her trustees.

That Clinton Gilbert and David Gilbert are now seised, and claim to own and hold in fee, certain land and premises in the city of New York, whereof the testator died seised, and which they obtained, either directly or indirectly, from the trustees and executors in the will named; and the bill prayed from Clinton and David, and from the trustees, a full disclosure and discovery thereof. The bill contained a like allegation in respect of Garret Gilbert, at the time of executing his assignment to Messrs. Owen, Gunn and Hand; and prayed from Garret Gilbert, and Messrs. Owen, Hand and Gunn, a full disclosure and discovery thereof.

That the complainant, Charlotte Gilbert, at the time of the death of her grand-father, the testator, was a minor, under the age of twenty-one years, to wit: of the age of nineteen years; and that Caroline Gilbert intermarried with the complainant, Lemuel Arnold, on the 11th day of October, 1837, and after she was of age. That sometime in March, 1838, the testator's daughter, Catharine Hunt, died, unmarried, leaving Catharine Matilda, her only child, who was married to Franklin Y. Vail, and was residing in St. Augustine, Florida.

The bill then prayed an answer and discovery; that the trusts created in and by the last will and testament of William W. Gilbert, or such of them, and so far as they should appear to be invalid, might be decreed by this court to be void.

That the surviving trustees, might be decreed to account for all the estate, moneys, evidences of debt, choses in action, and other property that had come into their hands, or the hands of either of them, as such trustees.

That such portion of the estate as might be necessary to pay or secure such of the several legacies, annuities and bequests given by the will, as might be deemed valid, should be set aside for that purpose, and safely invested, where necessary, under the direction of this court.

That the rights of the complainants, and of the heirs at law and next of kin of William W. Gilbert, deceased, of, in and to his estate, real and personal, might be ascertained and determined by this court. That the trustees might be decreed to deliver and transfer to the next of kin, under the direction of one of the masters of this court, all the personal property in their possession, or in the possession of either of them, belonging to the estate of William W. Gilbert. That the trustees, or either of them, that might have the evidences of title of the real estate in their possession, be decreed to deliver over the same to such person or persons as this court should direct. That the accounts of the trustees and executors might be finally settled and closed, under the direction of this court. That the right and interest of Betsey Gilbert, the widow, to dower in the real estate whereof William died seised, might be settled and determined by this court, agreeable to law. That, if the trust estate and the devise to the trustees be declared void, that then the real estate whereof the testator died seised, and yet remaining unsold, might be decreed to descend to his heirs at law; and might be divided among his heirs at law, or the persons who might be decreed to be entitled to the same, in proportion to their respective interests therein, by commissioners or otherwise, as this court should direct; or, if a division thereof should be impracticable, that then the estate, or such part thereof as could not be divided, be sold, under the direction of this court, and the proceeds distributed among the several parties, according to their respective rights in the premises. And the bill prayed for general relief.

The defendants, except Vail and wife, demurred and answered in June, 1840. Warren and George W. Gilbert put in a joint and several demurrer and answer; as did Garret Gilbert, Clinton Gilbert and Edward P. Heyer; also the assignees of Garret Gil-

bert; and Mr. Miller put in a separate answer and demurrer. The others answered only.

The demurrers were to so much of the bill as sought to set aside or impeach the will, or to have any discovery or relief in respect thereof, on the ground that the trusts and provisions of the will, or any of them, were inconsistent with the laws of this state.

The answers admitted the general statements contained in the bill, but traversed fully all the charges affecting its due execution, and the testator's competency to make a valid will.

George W. Gilbert, died after his demurrer and answer were filed, without issue, leaving a widow Mary Ann, to whom he devised and bequeathed all his estate, and made her his sole executrix. She afterwards became the wife of George B. Keith, and with her husband, were made parties by a bill of revivor and supplement in March, 1842. Their interests were concurrent with those of the complainants.

The demurrers were brought to a hearing before the Hon. Murray Hoffman, Assistant Vice-Chancellor, who on the 21st day of May, 1842, made a decree overruling the demurrers, in which he declared that William W. Gilbert died intestate as to one sixty-third part of his real and personal estate.

The defendants who had demurred, appealed from this decree to the chancellor, who on the ninth day of September, 1842, affirmed the decree. A further appeal was taken to the court for the correction of errors, where the decree of the chancellor was affirmed in 1843.

The testator's widow, Betsey Gilbert, died in September, 1844, and Clinton Gilbert became her administrator; and on being made a party as such, he stipulated to abide by her answer. The complainant Charlotte Gilbert, became the wife of H. F. Brayton, and the latter was duly made a complainant in the suit.

It appeared that the testator's widow, was his second wife, and that David, Clinton, Warren and George W. were her children. By his first wife, the testator's children were Garret, Thomas W., Ephraim, Catharine and Elsey; of whom Thomas

Arnold v. Gilbert

W. died before the testator, leaving his widow and children as stated in the bill.

After the demurrers were overruled, no further pleadings were interposed by the defendants. The complainants did not attempt to sustain their allegations against the due execution of the will.

The cause came on to be heard on the bill, the answers, the replications thereto, and certain formal proofs; the great controversy being upon the validity of the trusts of the will.

*E. Sandford* and *S. Stevens*, for the complainants, argued upon the following points.

*First.* The will of the testator devises his real estate to the trustees named therein, upon specific trusts attached to such estate in their hands. Beyond the trusts to sell for the payment of the debts of the testator, the trusts created by the will are invalid.

I. Because the trust estate is not created for any of the legal purposes of an express trust as authorized by law.

1. The trusts to receive and pay over the rents and profits of real estate, to the persons beneficially interested therein, are void. (*Coster* v. *Lorillard*, 14 Wend. 265; Opinion of Chief J. Savage, p. 322, 328; of Senator Maison, p. 352; of Senator Young, p. 378; *Hawley* v. *James*, 16 Wend. 61; Opinion of Bronson, J. p. 156, 161; 1 Rev. Stat. 722, 2d ed. § 55; p. 721, § 45.)

2. The trusts to make partition of the estate, and to sell the lands and convert them into money, for the purpose of making division among the parties entitled to the fund, is not authorized by law.

3. The authority to lease lots for a term of years, and to sell, purchase or exchange slips or gores or other pieces of ground, to enable his executors to manage and benefit the estate given in the 21st and 23d clauses of the will, are not trusts authorized by law, and cannot sustain the trust estate.

2d. The doctrine of equitable conversion is not applicable to the real estate devised by this will, and cannot be invoked to

sustain its trusts and provisions, which are otherwise illegal and void.

Where there is a valid devise of real estate, and a peremptory direction to sell it, a court of equity may deem a sale as having actually taken place, for any legal object, in administering the estate, or executing the will; but it would sanction complete frauds upon and evasions of the statute of uses and trusts, to indulge this fictitious assumption for the express purpose of sustaining a devise, which in other respects is against public policy and prohibited by statute.

SECOND. The trust estate created by the will is void, because it suspends the power of alienation for a longer period than is allowed by law; or if the doctrine of equitable conversion be applied, and the estate held in trust, under the will be regarded as personal property, because the trust suspends the absolute ownership of personal property for a longer period, than during the continuance, and until the termination of two lives in being at the death of the testator.

1. In either view of this point, the interest of the respective *cestuis que trust*, under this will, are inalienable during their several lives. (*Gott* v. *Cook*, 7 Paige, 521, 536, 538; *De Peyster* v. *Clendining*, 8 Paige, 309; *Clute* v. *Bool*, 8 Paige, 85.)

2. The will does not contemplate a sale or disposition of the whole of the real estate, until after the decease of the widow and Ephraim. Four-sevenths of the property devised to Warren Gilbert, George W. Gilbert, Mrs. Fish, and Mrs. Hunt, do not then vest absolutely, but the trust is continued for their several lives with remainders over.

3. The trust is continued, and no final distribution can be made of the estate, until after the determination of six lives in being at the death of the testator; viz, the widow, Ephraim, Mr. Hunt, Mrs. Fish, Warren and George; supposing George and Warren to die without children.

4. If George and Warren die leaving children, the trust appears to be designed to continue as to their portions during the lives of all their children, as in that event interest is directed to be paid to them.

(Under this point, the counsel also cited, 2 Prest. on Abstr. 158,

159 ; 2 Crompt. & Jer. 334 ; *Ware* v. *Polhill,* 11 Ves. 257, 283 ; 2 Sugd. on Powers, 492, 496 ; Leigh & Dalz. on Eq. Conv. 48, 49, 54 ; 2 P. Will. 308 ; 5 Madd. 25 ; *Kane* v. *Gott,* 24 Wend. 641 ; *Van Veghten* v. *Van Vechten,* 8 Paige, 128.)

The trusts created by the will, should be adjudged to be void, and the decree should declare that the real estate of the testator descended to his heirs at law, free and discharged from all conditions, devises, authority and control of the trustees. The decree should direct an account to be taken, as prayed by the bill.

*E. H. Owen,* for the assignees of Garret Gilbert, supported the propositions contained in the points next stated.

*C. O'Conor* and *George Wood,* for the other defendants ; argued in support of the following points.

I. The decisions made upon the demurrer in this cause, do not authoritatively determine that any part of the will of William W. Gilbert was void.

1. The only operative part of Vice-Chancellor Hoffman's decretal order, is the disallowance of the demurrer. It was so held in both the appellate courts.

2. The disallowance of the demurrer was founded, (among others,) upon the ground assumed to be sufficient of itself, that for aught that appeared, there might be an intestacy as to part of the property, by reason of George and Warren Gilbert, or the last survivor of them, dying without children.

3. The demurrer was not well taken, because it was merely a demurrer to an argument advanced in the bill, and not to the whole case stated in the bill, or any substantive part thereof.

II. If this is not so, still the order overruling the demurrer will be sufficiently respected, if this court, in its final decree, declare an intestacy as to any part of the estate however small. The opinion pronounced by Vice-Chancellor Hoffman that an intestacy existed as to a certain proportion, is not binding on the court. (*Methodist Episcopal Church* v. *Jacques,* 17 Johns. 559.)

III. There is an equitable conversion of the whole estate ; and

the validity of the several limitations contained in the will, must consequently be tested by the rules relating to the creation of estates or interests in personal property. ( *Wright* v. *Methodist Church*, 1 Hoff. R. 202; *Kane* v. *Gott*, 24 Wend. 641 ; *Bulkley* v. *De Peyster*, 26 Wend. 21 ; *Bunce* v. *Vandergraft*, 8 Paige, 37 ; *Laus* v. *Bennett*, 1 Coxe's Cases, 167.)

IV. Trusts of personal estate, do not like trusts of real estate under the third subdivision of the 55th sec. (Vol. 1, p. 728 of Revised Statutes,) suspend the power of alienation, because,

1. Such trusts are alienable at common law, and are not rendered inalienable by these statutes.

2. The statutory provision is confined in express terms to real estate.

3. Statutory regulations confined expressly to real estate, should not be extended by a forced analogy to personal estate, which is altogether different in its character, properties and uses.

4. The legislature for wise reasons, refrained from fettering with inalienability, trusts of personal estate. ( *Kane* v. *Gott*, 24 Wend. 661, 6.)

V. The rents and profits to be received by the trustees are limited to them in a lawful way, and ought to be sustained, because,

1. They should be deemed personal estate, because merely incidental to the conversion of the real estate into personalty, and going along with it into the same common fund.

2. Supposing they are to be deemed real estate in equity, still they are merely incidental to the express trust to sell, and are not limited under the third, but under the second subdivision of the 55th section.

3. The trustees under the third subdivision, do apply the rents and profits to the use of the *cestui que trust*, by appropriating a portion of them to the purposes of the estate, and paying over the balance to the *cestui que trusts*.

4. That was the common law mode of applying profits to the use of the party entitled to the equitable beneficial interest; and the statutes should be construed as nearly as may be, to the rule and reason of the common law.

5. If applying to the use of the *cestui que trust* should be

construed to mean the management and application of the funds when converted into personalty, to the support and to the domestic comfort and enjoyment of the *cestui que trusts* ; that would be an exercise of guardianship, and not a trust.

6. The design of the act was not to create a guardianship over the person and personal estates arising from rents and profits, but to establish an exclusively active trust, as understood in equity law. (*Gott* v. *Cook*, 7 Paige, 521, 536.)

VI. All the estates and interests given by the will are alienable, except the contingent remainders expectant upon the termination of the lives of George W. Gilbert and Warren Gilbert.

VII. The share given to Catharine Hunt, out of the third allotted to the widow, with all its ulterior subdivision and limitations, is lawful and ought to be sustained, because,

1. As a trust of personal estate, for the reasons above given, it is not inalienable.

2. As to the shares therein of Warren and George, their alienability is not suspended during the lives of the widow and of Catharine Hunt.

3. The respective life estates of Warren and George, (if allowable,) do not suspend alienation, inasmuch as they are alienable, being personal estate.

4. The remainder to the respective children of Warren and George, suspends alienation during one life only, viz. the life of Warren and of George, respectively, upon the termination of which the children to take their shares respectively, will be ascertained, and in a condition to alienate.

VIII. The absolute ownership or absolute power of alienation, is consequently not suspended as to any part of the estate, for a longer period than during the continuance of the two specified lives of George W. and Warren Gilbert; and at their termination, such suspense must inevitably cease.

IX. If the 17th section of the title concerning estates in land, has no application to a case where the ultimate remainder may still be contingent at the expiration of the second successive life estate, then there is no objection to any number of successive life estates, provided the ultimate remainder be so limited that it

Arnold v. Gilbert.

must vest at or before the expiration of some two certain specified lives.

X. If the 17th section does apply to *all* cases of successive estates for life, but is only inoperative as to such contingent remainders in failing to accelerate their vesting, then every third and subsequent successive life estate given in any share of the property, is void ; and the income, (if any there shall happen to be,) accruing during the term of such intended third and subsequent life estate, is undisposed of by the will, and must pass as in case of intestacy, to the heirs at law or next of kin of the decedent.

XI. The discretionary powers given to the executors, as to paying interest on legacies, making a final distribution, &c., do not suspend alienation, inasmuch as every absolute owner of property ought, and is presumed to exercise a similar discretion ; and delay under the exercise of discretion, is not a suspension, within the meaning of the law. ( *Van Vechten* v. *Van Veghten,* 8 Paige, 122, 3.)

XII. The power of leasing in section 21st of the will, is valid as a power in trust, and inasmuch as such lessees can join in alienation, the power to alienate is not thereby suspended. So of the power to exchange. (*Hawley* v. *King,* 7 Paige, 445.)

The Assistant Vice-Chancellor.—The late assistant vice-chancellor decided upon the demurrer in this cause, that the trusts of the will of William W. Gilbert, were void as to one sixty-third part of the mass of his estate. The particular shares which were held void, were the one-sixth of one-seventh of the third part, in which the widow was vested with a life interest, which fraction was to devolve upon George Gilbert for life, (after a second life interest in the seventh part to Mrs. Hunt,) with remainder to his children, and a like fraction of the same seventh part, which was limited in the same manner, to Warren Gilbert and his family. In these fractions, each one hundred and twenty-sixth part of the estate, it was adjudged that the will suspended the absolute ownership of the property, (treating it as personal estate,) beyond the period limited by law.

The chancellor affirmed the decision in its fullest extent, and his decree was affirmed by the court for the correction of errors.

These decrees establish, as the law of the case, that the trusts of the will are void, to the extent of the two fractions before mentioned.

The opinions delivered in the court for the correction of errors, are so irreconcilable with each other, (although all concurring in the affirmance,) that it is impossible to say on what specific ground that court proceeded. The chancellor held the trusts to be void to the extent stated, without considering the question whether the real estate was to be deemed converted at the death of the testator. The assistant vice-chancellor held that there was an equitable conversion from that date; but, following as he did, the chancellor's doctrine as to trusts of personal property, it was not necessary for him to decide the question of conversion.

Thus I have no guide in the examination of the remaining trusts of the will, from the adjudications upon the demurrer, beyond the opinion of the chancellor.

It was argued at the hearing, with equal ingenuity and force of reasoning, that future interests in trusts of personal property, are not subject to the provision of the statute of Uses and Trusts, which makes trust interests in lands inalienable. (1 R. S. 729, § 63.) And it was contended, that the various opinions to that effect which have been pronounced by judges in the court for the correction of errors, if they have not established the position, have, at least, left it an open question.

This is indisputably, a very important, if not a controlling point, in the construction of the will now before me, and I will at once state my views on the subject.

The court of last resort has never decided that future interests in trusts of personal property, are not within the provision of the statute to which I have referred. On the contrary, it is difficult to perceive how that court could have affirmed the decrees of the chancellor in some of the cases, where he held that such interests were not alienable, without sustaining that doctrine.

But, conceding that the question is still open in our highest court, it is clearly and firmly established by the learned head of the court of chancery, by whose judgments I must be governed,

that trusts of future or contingent interests in personal property, are subject to the sixty-third section of the statute relative to Uses and Trusts. Such was his opinion on the demurrer in this cause, and he so decided in *Hone* v. *Van Schaick*, 7 Paige, 221, 233; *Gott* v. *Cook*, 7 ibid. 521, 535; *Clute* v. *Bool*, 8 ibid. 83; and *De Peyster* v. *Clendening*, 8 ibid. 295, 305.

The whole property of William W. Gilbert is devised and bequeathed in trust. All of the interests which the will carves out of the third part of the estate, which was given to his widow for life, and which are to take effect after her death, are *future interests*, and many of those in the other two thirds, upon which it will be my duty to comment, are *contingent interests*. It is, therefore, unnecessary, in respect of the effect of those limitations, for me to decide whether the real estate was converted into personalty upon the testator's death, or not till a subsequent period.

In my estimation, it is, nevertheless, material to ascertain whether the interest given to the widow by the will is real estate, or whether it may be regarded as personal property from the time that the will became operative. I will therefore, in the first place, examine that question.

So far as it was necessary to sell real estate for the payment of debts, the will directs an immediate sale, and the conversion to that extent is unquestionable.

The fourteenth section directs sufficient sales *to make the specific investments* enjoined by the will, and to pay the legacies with as little delay as possible, having a regard always for the interest of the whole estate.

To this extent also, an equitable conversion may probably be deemed to have taken place. But I do not understand this clause as applying to the bequests of the mass of the estate, contained in the fifteenth section, nor to the provision for the widow.

By the eleventh section, the widow was to receive from the trustees, one third of the net amount of the rents and profits of the real estate, *while it remained unsold.*

Under the twelfth section, the trustees, in their discretion, could undoubtedly have sold the whole of the real estate within a year after the testator's death, and thus turned the widow's third of the rents into a third of the interest of the purchase money;

and he evidently expected that a partial sale would be made while she lived. But I do not discover in the will, any ground upon which she could ever compel the trustees to sell the lands for the purposes of her income; and it is at least doubtful, whether those entitled under the fifteenth section, could compel a sale by the trustees, until the period appointed for the final distribution. It is clear, as to the widow, that the discretion vested in the executors was beyond her control; nor could this court interfere to coerce their discretion in her behalf. (See *Bunner* v. *Storm*, 1 Sandford's Ch. R. 357.)

Her interest was devised to her *as the income of real estate*, and it might continue such during her whole life. If its character were changed by a sale, and it from thence became the income of personal property, such change could not have relation back to the testator's death, so as to give to the whole interest the quality of personalty from that time. It is only an imperative intent to convert, bearing upon the particular interest as to which the question arises, which can have that effect.

Taken by itself, therefore, I do not think that the widow's interest under the will, can be regarded as converted into personal estate from the death of the testator.

Assuming, for the argument, that the shares of those who were to take the bulk of the estate under the fifteenth section, ought to be regarded as personalty from his death; so that on the death of David Gilbert, for example, during the widow's lifetime, his next of kin, and not his heirs, would have taken his seventh part; does that affect the question as to the conversion of the widow's life interest in the rents of the third part of the lands?

For the final distribution of *his estate*, the testator contemplated that all his lands should be turned into money, and that his children and descendants, taking under that distribution, should receive money and securities, and not real estate. But to establish an entire equitable conversion, there must be a design to give to the produce of real estate, the quality of personalty, *to all intents.* This is the rule stated by Mr. Cox, in his note to *Cruse* v. *Barley*, (3 P. Will. 22,) and it is adopted in all the subsequent authorities.

- There was no conversion *for all purposes*, by this will. For

if David Gilbert had died in his father's lifetime, the seventh part given to him would have gone to the heirs at law, and not to the next of kin of the testator. (*Ackroyd* v. *Smithson*, 1 Bro. Ch. C. 503; *Wood* v. *Cone*, 7 Paige, 472.) And, as I have shown, the testator, so far from impressing the quality of personalty on this provision for his widow, gave it to her as realty, and so devised the estate out of which it was to issue, that it must continue to be realty to the end of her life, unless its character should be changed by the exercise of the unlimited discretion of the trustees.

Thus, it may be that the testator has converted the real estate out and out, as to the quality of the property which his children are to take under the fifteenth section of the will; while he has made no conversion in the quality of that which he gave to his widow.

He has, at the most, authorized his trustees to convert the latter, but he has not required it. This discretionary power, no more affects the quality of her estate in the lands remaining after the payment of the debts and legacies, and making the specific investments, than it would have done were it expressly restricted in its exercise until after her death.

I think that the question of conversion, as to the widow's interest, is unaffected by the point as to the conversion of the subsequent trust interests, and must be considered by itself. Thus regarding it, the provision made by the will for her income, must be deemed, at the death of the testator, as a trust in real estate.

The validity of the trusts, depends upon their effect and character when the will became operative, and in my examination of those trusts I must, therefore, treat the widow's interest as realty, and not as personal property. I will now proceed to consider the effect of those trusts in the will, which were brought to my notice at the hearing.

FIRST. Following the course of the third part of the estate, the rents and income of which were given to the widow, through the devolutions prescribed by the will. As a trust interest in lands, her right to the income was inalienable at the death of the testator.

The third part, was therefore effectually locked up during her

life. Advancing to the time when a part of the lands was converted, the interest of the widow in the income of the proceeds, must be treated as an interest in personal property, which was future or expectant at the testator's death, and equally incapable of alienation.

Upon the death of the widow, this third part of the estate became divisible into seven equal portions, and Mrs. Hunt, Mrs. Fish, George Gilbert, and Warren Gilbert, were each to enjoy one of those portions.

I will first take up Mrs. Hunt's seventh part. By the sixteenth section of the will, she was to have the interest until her death or re-marriage; the whole seventh being still held in trust. On either of those events, the fund, ($5000 of her whole seventh excepted,) by the seventeenth section was to be divided between the other six children there named; but the share of Mrs. Fish goes to her for life only; and George and Warren take life interests in their shares also, with subsequent limitations which need not be mentioned in this connection.

Thus, as to three sixth parts of the share of Mrs. Hunt in the widow's third of the estate, if all the bequests are to be enjoyed, there is a suspense of the absolute ownership of the fund for three lives which were in being at the testator's death. In other words, so long as either the widow, or Mrs. Hunt, or Mrs. Fish lived, an absolute title to the latter's proportion of the third part, derived through Mrs. Hunt, could not be conveyed or transferred, though every person mentioned or referred to in the will, should join in the transfer.

And the same thing is true of the portion of Warren and George, derived in the same manner. It is no answer to the argument, to say that Mrs. Fish, or Warren, or George, might die before Mrs. Hunt's death or re-marriage ; or that Mrs. Hunt might die before the widow. The limitation is illegal if it *may* contravene the statute ; it is not necessary for the party impeaching it, to show that it *must* have that effect.

The chancellor's opinion, when this cause was before him on the demurrer, shows that the provision of the revised statutes, which, when more than two successive estates for life are limited, cuts off those beyond the two first, (1 R. S. 723, § 17,) does

not relieve the case from this difficulty, in respect of these portions derived to Warren and George. If their life estates were rejected for the excess, the absolute ownership would still remain in suspense during their respective lives, because until their deaths, it could not be known who was to succeed to those portions. It is clear, therefore, that these portions, intended for George and Warren, being each an one hundred and twenty-sixth part of the mass of the estate, fall within the prohibition of the statute, and the trusts thereof attempted to be created by the will, are void.

This was decided on the demurrer, and I have gone briefly through the argument, as an introduction to the discussion of the remaining trusts.

As to the one hundred and twenty-sixth part limited to Mrs. Fish, arising from Mrs. Hunt's share of the third of the estate, the life interest given to Mrs. Fish may be stricken out, pursuant to the seventeenth section of the statute relative to the creation and division of estates before cited; and then the question remains, upon the limitation over "to her lawful heirs, according to the laws of this state, in cases of intestacy," as applicable to her "children and heirs." The use of both *children* and heirs, indicates that the testator did not overlook the distinction between the two terms. Mrs. Fish could have no *heirs,* (properly so called,) while living, and her children living at the date of the will, or at the testator's death, might never become her heirs. Construing this part of the 16th clause of the will, with the aid of the kindred language in the 17th clause, I think, by "lawful heirs of Mrs. Fish," the testator intended those persons, her children and grand-children, who should be her heirs at her decease. (*Bowers* v. *Porter*, 4 Pick. 198.) Upon this construction, there is the same difficulty that exists in respect of the shares of George and Warren already discussed. It cannot be known while Mrs. Fish lives, who will be entitled to this one hundred and twenty-sixth part as her heirs, and the absolute ownership is therefore suspended during her life, as effectually as if the bequest of the interest to her for life were valid and operative.

Next, pursuing the application of the principles already stated

as to Mrs. Hunt's share of the third of the estate, let us take Warren and George's seventh parts of the same.

Each has a life interest in the income. This, with that of the widow, exhausts two lives. If either shall die without children living, his share becomes divisible into four parts, (or three, if the survivor of the two leaves no children.) The survivor then takes a life interest in one-fourth of the other's share; and until he dies, (though his life interest be void,) it cannot be known upon whom that fourth will ultimately devolve. Suppose George were to die first without children. Then Warren, by the terms of the will, is to succeed to the income of one-fourth, (that is, of one eighty-fourth of the whole estate,) for his life. This is void for excess, it being the third successive life estate. But the absolute ownership of this fraction is suspended, until his death shall demonstrate who is to take the succession. It follows that, in respect of this one eighty-fourth part, the trusts of the will are invalid.

If Warren should die without children, leaving George surviving, the same state of things would exist as to another one eighty-fourth part of the estate. Both of these contingencies could not occur, but one of them was as likely to occur as the other, at the death of the testator, and the one would affect a different portion of the estate from that subject to be influenced by the other.

SECOND. This case is presented in another aspect, which, if I have viewed it correctly, has a far more extensive bearing upon the trust interests created by the will.

The seventh clause of the will provides a fund of $3000, the income of which is to be paid to Ephraim, quarter yearly, during the full end and term of his natural life. The fifteenth clause, which is the only one directing a division of the *corpus* of the estate, in express terms brings this fund of $3000, as well as the fund set apart for the use of the widow for life, into the estimate, account, and distribution. The conclusion appears to be inevitable, that no general distribution was contemplated by the testator until after the death of both the widow and Ephraim. This is confirmed, by the fact that all the provisions of the will,

as to the several seventh parts in which the estate is given, upon the division prescribed in the fifteenth section, are consequent upon, and follow such division. These separate seventh parts, come into being for the first time, on the general distribution, and no one of the children could require the trustees to assign to him his seventh part, or deliver over to him any portion of the capital of the estate, whether in lands or personalty, upon or towards his seventh part, until after the death of the widow and Ephraim. In order to avoid a collision with the statute against perpetuities, the respective interests in the distribution should vest absolutely upon the death of those two persons. But such is not the effect of the will. On the final distribution, four of the seven parts are to remain in trust.

*First.* Mrs. Hunt is to have a life interest in one seventh, determinable sooner, on her re-marriage.

Assuming, for the present, that Ephraim's right in the $3000, was not a future interest, and, being personalty, was alienable, and that his life is not to be counted ; Mrs. Hunt's interest was undoubtedly expectant ; and following upon the life estate of the widow, at least two lives must have worn out before her interest would cease. Her seventh should then vest absolutely at all events. Instead of which, three sixth parts of it are again given over for life, to Mrs. Fish, George, and Warren, and until those lives drop, the persons ultimately entitled, cannot be ascertained. This, as I have before stated, is the necessary consequence, even if their several life interests be rejected as void.

Thus in one-half of Mrs. Hunt's share, or in one-fourteenth of the bulk of the estate, the absolute ownership is suspended beyond the limit permitted by law.

So far, I have gone on the assumption that Ephraim's life might be left out, in estimating the suspension of the absolute ownership. But can his life be thus omitted ? Suppose that Warren Gilbert had died, leaving children, soon after the testator, and while the widow and Ephraim were living : Could an absolute interest in Warren's one-seventh of the estate, have been conveyed to a purchaser at that time ? It could not be done, because the trustees would be indispensable parties to the transfer, and it would be a palpable violation of their trust, to divide

off one-seventh of the estate, while Ephraim or the widow survived.  It follows, that Ephraim's life must enter into the computation, in determining how long these various provisions suspend the absolute ownership.  This brings the whole of Mrs. Hunt's seventh part, within the prohibition of the statute.  For Mrs. Hunt's life is the third in the series, and it cannot be rejected, as in some of the instances heretofore mentioned, because it is not the third life estate or interest.  In the widow's third, it stands as the second life interest in succession ; as to the other two-thirds of her seventh, it is the first.  My conclusion is, that the trusts as to the whole of Mrs. Hunt's seventh part, are void.

The objections to the seventh parts of Mrs. Fish, Warren, and George, are still more forcible.  In each, there is a' life interest, which though not farther removed than the second in succession, is the third in the series of lives during which the ownership is suspended ; and, in addition, the persons who are to take, upon the termination of their lives respectively, cannot be known while they live.

It will be observed, that, in this review of the provisions of the will, I have treated them as if the real estate were to be deemed converted at the death of the testator, with the single exception of the devise of the rents to the widow.  Whether that be the proper era, or whether the general conversion relates to the death of the widow and Ephraim, or the survivor of them, I have not examined, and express no opinion.

But applying the principles settled in this court to this will, on the most careful consideration which I can give to the subject, I am compelled to say, that in my judgment, the limitations of the will are void, as to four sevenths of the property disposed of by the fifteenth and subsequent sections.

Upon this conclusion, it is needless to look into the minor, points raised against the other parts of the will.

The trusts being so far void as to overturn the main design of the testator, the overthrow of the residue would follow as a matter of course, even if the trust interests ; which, if standing alone, might have been sustained ; were not involved in the fate of the void trust devise to the executors.  (See *Coster* v. *Lorillard*, 14 Wend. 265.)

The purposes for which the trustees were to sell and receive the interim rents, aside from the legacies to the children, and the general distribution, have been accomplished long since ; and there is nothing in the way of declaring, that subject to those purposes and the exercise of the power given therefor, the real estate descended to the heirs at law, and that the next of kin were entitled to the personal property of the testator.

Of the specific legacies, that to Mrs. Jane Gilbert is distinct from the void trusts, and her receipt of it is not inconsistent with the breaking up of the will at large. But the legacies to her daughters, must be relinquished upon their coming in as heirs and next of kin. (*Hawley* v. *James*, 16 Wend. 62 ; *Thompson* v. *Carmichael's Executors*, 1 Sand. Ch. R. 387.)

I have concluded, with some hesitation, that the legacies given by the sixth section of the will, must also fail. They are payable out of the sales of the real and personal property. The parties are all to take as heirs, on avoiding the trusts, and must therefore waive the legacies. Besides, so far as they are to be made out of the real estate, they are dependent on the void trust, and two of them form a part of the subordinate trusts which cannot be sustained. The devise cannot be maintained as a power in trust, in respect of these legacies, if it be void as an express trust. (*Hawley* v. *James*, 16 Wend. 174, 175, per Bronson, J. ; 1 R. S. 728, §§ 55, 58.)

The acts of the trustees under the will, should be confirmed, and in the account to be taken, they should have all just allowances, including compensation for their services. The valid powers of sale, were probably sufficient for the protection of *bona fide* purchasers. The payments made upon the legacies or bequests which are avoided, may be adjusted between the respective heirs in the account. The case of *Hawley* v. *James*, (16 Wend. 62, 182, 274, 278,) furnishes a precedent for the proper decree, in this and many other particulars.

There must be a decree declaring these principles, and directing the trustees to account before a master. The complainants costs throughout, and the costs of the other parties in the suit while pending in this circuit, are to be paid out of the estate.

On recurring to the answers, I find that the want of parties is set up by way of demurrer. No point of this kind was made at the hearing, but it is manifest that there should be other parties brought in, before an effective decree can be entered. The administrators of Ephraim Gilbert, Mrs. Hunt, and Antoinette Gilbert, respectively, are necessary parties. The bill states that the two former died without issue, and it shows that the heirs of all three are parties. It should also appear that they died intestate.

A supplemental bill may be filed to remedy these omissions.