JOSEPH PAUL RUSCONI & others, petitioners.

Bristol. May 2, 1960. — June 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Name. Probate Court, Change of name, Parties.*

Under G. L. c. 210, § 13, permitting "any person" to be heard upon a petition for a change of name, relatives of a husband and wife and children seeking to change their surname under § 12 were entitled to file appearances and be heard in opposition to the petition. [168]

In a proceeding under G. L. c. 210, § 12, by a husband and wife and children bearing a surname indicating Italian origin to change their surname to one not indicating such origin, it was error on the part of the Probate Court judge to deny the petition "in the exercise of . . . [his] discretion" because he thought the change would be "un-American" and would constitute "an affront" to persons of Italian origin; the petition should have been allowed in the absence of anything to show that the petitioners were seeking the change for a fraudulent or other dishonest purpose, or that the change would not be consistent with the public interest. [170–171]

PETITION filed in the Probate Court for the county of Bristol on August 10, 1959.

The case was heard by *Considine, J.*

*Melvin S. Louison,* (*Leonard Louison* with him,) for the petitioners.

*Peter B. Gay,* for the respondents.

SPALDING, J. Joseph Paul Rusconi and his wife, Anne Wilma, on behalf of themselves and their two minor children Paul Crosby and Jon Lance (aged twelve and eleven respectively), brought this petition under G. L. c. 210, §§ 12 and 13, to have their surname changed to Bryan. Appearances in opposition were filed by Guiseppe Rusconi, Joseph's father, James Rusconi, a brother, and by Joan A. Friary, a sister. In addition, Joseph's mother, through her husband, and two brothers of Joseph opposed the petition.

After hearing, the judge entered a decree denying the petition, from which the petitioners appealed. Pursuant to a request by the petitioners the judge filed a report of

material facts. G. L. c. 215, § 11. The evidence is not reported.

1. The petitioners filed a motion to strike the appearances filed by Guiseppe and James Rusconi and Joan A. Friary and appealed from the denial of their motion. The record, however, does not disclose that the motion was ever expressly denied. If we treat the failure to act on the motion as an implied denial, there was no error. General Laws c. 210, § 13, provides, in part, "The court shall, except for good cause shown, before decreeing a change of name, require public notice of the petition to be given and *any person may be heard thereon*" (emphasis supplied). The motion to strike could not have been granted.

2. On the merits, the findings of the judge both in the decree and in his report of material facts present questions of some difficulty. In the decree the judge stated that the "facts in this case do not warrant an allowance of the petition." Preceding this conclusion, however, he recited the following: "While it seems essential in these great United States of ours that we maintain a uniform language and a common tongue in order to conduct our daily enterprises whether business or social, it is nevertheless fundamentally important that we not lose sight of the fact that this country was founded and continues to function by peoples of many racial groups. This seems a proper time to renew and review the purposes of Our Founding Fathers, for many peoples from many countries to live in harmonious respect of every race. Any attempt by any of our citizens to bring disrespect or ridicule to any one of our races is un-American and cannot be justified."

Turning to the report of material facts, made after the entry of the decree, we find that considerations similar to those mentioned in the decree appear to have influenced the judge. We summarize these findings as follows: The Rusconi family is well known and respected in the community, and is prominent in Italian circles. As a result of the present proceedings "injuries to the feelings and sensibilities of the members of the Rusconi family have resulted"; they

have been "held up to ridicule and embarrassment, in this predominantly Italian community." The objecting members of the family are "proud of the name Rusconi, and feel that this petition is a slur to the Italian race." While the petition appears to be brought by Joseph and his wife and their two minor children, in reality it is the petition of the wife "who reluctantly bears this Italian name and scorns the heritage of her husband." There "exists no confusion or inconvenience over the use of the name Rusconi." The "nature and purpose of the request for the change of name in this instance [is] an affront to those bearing the name of Rusconi in particular and the Italian race in general." After stating that he was "guided and controlled by the principles of law and of justice" the judge "in the exercise of . . . [his] discretion . . . [concluded] that an allowance of this petition would bring disrespect and ridicule in this Italian community" and that in the interests of a "harmonious respect of races, public policy is best served by a denial of this petition."

Section 12 of G. L. c. 210, after empowering Probate Courts to hear petitions for change of name, provides, with certain exceptions, that "No change of the name of a person . . . shall be lawful unless made by said court for a sufficient reason consistent with public interests." In two comparatively recent cases (*Merolevitz, petitioner,* 320 Mass. 448, and *Buyarsky, petitioner,* 322 Mass. 335) this court has discussed at some length the principles which govern a change of name both at common law and under the statute. See *Mark* v. *Kahn,* 333 Mass. 517. In the *Buyarsky* case it was said at page 338, "A man, if acting honestly, may assume any name he desires and by which he wishes to be known in the community in which he lives or in the trade circles in which he does his business. The law does not require a man to retain and to perpetuate the surname of his ancestors. The common law recognizes his freedom of choice to assume a name which he deems more appropriate and advantageous to him than his family name in his present circumstances, if the change is not motivated

by fraudulent intent.   The statute, G. L. . . . c. 210, § 12, does not restrict his choice but aids him to secure an official record which definitely and specifically establishes his change of name.''

It is apparent from what was said in the *Buyarsky* case that the right of one to change his name, although not absolute, is a very broad one.   We are of opinion that the statute when read, as it must be, against the background of the common law, was not intended to permit, as controlling, considerations of the sort relied on by the judge.

From a reading of the recitals in the decree and the findings in the report of material facts it is apparent that the judge denied the petition here because he thought the change was ''un-American'' and constituted an affront to persons of Italian origin.   Under this reasoning a person belonging to a particular national or ethnic group in the community could rarely, if ever, change his name to that of some other group.   Many, if not most, of the petitions brought under the statute could not meet this test.   We decline to place such a construction on the statute.   It is not open to the court to inquire into the motives that prompt one to change one's name, provided, of course, they are not for dishonest or unlawful ends.   *Merolevitz, petitioner,* 320 Mass. 448, 449–450.   We believe that most persons are entirely content, indeed proud, to bear the names which they acquired at birth.   But there may be some who for one reason or another do not care to do so.   These reasons may be good or indifferent, wise or unwise, but it is not the function of the courts to pass upon them.   The judge, it is true, found that the petitioner was ''in reality'' Anne Rusconi, Joseph's wife, who ''scorns the heritage of her husband.'' But Joseph joined in the petition and pressed it both in the court below and in this court.   We cannot, therefore, treat him as other than a petitioner.   That the feelings of his family might be injured by his attempt to change his name is understandable.   But, however appealing this attitude may be, it does not constitute a reason, good in law, for the denial of the petition.

We are mindful that the judge purported to deny the petition "guided and controlled by the principles of law and of justice" and "in the exercise of . . . [his] discretion." But it is apparent that these conclusions were dominated and controlled by the reasons discussed above, which, as we hold, were not relevant. "A report of material facts under the statute must contain every fact necessary to support the decree, from the entry of which no fact not expressly found may be implied." *Carilli Constr. Co.* v. *John Basile & Co. Inc.* 317 Mass. 726, 727.

There are no findings that reveal that the petitioners are seeking a change of name for a fraudulent or other dishonest purpose, or that such a change would not be consistent with public interests. The final decree, therefore, is reversed, and a decree is to be entered allowing the petition.

*So ordered.*