ALVIN S. HOCHBERG & another,[1] trustees,[2] vs. MATTINA
PROCTOR & others.[3]

Suffolk. January 8, 2004. - April 6, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Will*, Construction, Mistake. *Rule Against Perpetuities. Words*, "Bearing the name."

In an action by trustees under a will seeking instructions as to the distribution of the principal of three trusts created by the will, this court concluded that the words "male descendants . . . bearing the name of Proctor" referred solely to males whose surname is Proctor, and thus excluded female descendants [409-413]; that one of the trusts created by the will was not subject to a certain termination provision [413]; that the testator's grandniece's life estate in a certain trust did not violate the rule against perpetuities because it vested in interest, although not in possession, when the trust was created [413-417]; and that, under the doctrine of capture, the property in two terminated trusts passed, by way of a resulting trust, into the residue of the testator's estate [417-418].

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on April 26, 2000.

The case was heard by *Elaine M. Moriarty*, J., on a statement of agreed facts.

[1]Boston Safe Deposit and Trust Company.

[2]Under the will of Thomas E. Proctor, Jr. (Thomas, Jr.).

[3]James Proctor Morss and Nicholas Emerson Proctor King (male middle name Proctors) (represented by their guardian ad litem); Elizabeth Proctor Ferguson and Paige Proctor Morss (female middle name Proctors) (represented by their guardian ad litem); Emery Van Daell Rice, Thomas Emerson Proctor Rice, Jr., Jane Patricia Rice (Rices); Neil W. Rice, Second, and Neil Rice Ayer, Jr. (Neil Rices); Henry B. Scott, Gregory K. Scott, and Peter E. Scott; and certain minors and unascertained and unborn persons (represented by their guardian ad litem). Interested parties in this case include those persons, or representatives of the estates of those persons, who were heirs of Thomas, Jr., as of the date of his death; heirs of Thomas E. Proctor, Sr., as of the date of his death; heirs of Thomas, Jr., as of May 31, 1999; and descendants of Thomas, Sr., living on May 31, 1999. It appears that all of the above were served notice of the amended complaint for instructions. Some elected not to appear.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert J. Rutecki (Wendie E. Murstein* with him) for Mattina Proctor.

*Joseph L. Kociubes* for Nicholas Emerson King & another.

*John P. Fulginiti (Ann Wagner* with him) for Emery van Daell Rice & others.

*Raymond H. Young,* for the plaintiffs, was present but did not argue.

*James R. DeGiacomo,* for Eden N. Ayer, was present but did not argue.

GREANEY, J. This is a complaint for instructions by the trustees under the will of Thomas E. Proctor, Jr. (Thomas, Jr.), as to the distribution of the principal of three trusts created by the will. A judge in the Probate and Family Court appointed guardians ad litem to represent minors and unascertained and unborn issue, and, following argument, entered an amended judgment directing distribution of two of the trusts and reforming the third, in a manner that will be discussed later in this opinion. Respondents Mattina Proctor (Mattina) and James Proctor Morss and Nicholas Emerson Proctor King, by their guardian ad litem, appealed. We granted their application for direct appellate review.[4] For reasons that follow, we now vacate portions of the amended judgment and direct that the principal of the trusts created by the THIRD and FIFTH paragraphs of the will be added to the residuary trust created by the FIFTEENTH paragraph, to be distributed, as directed in the amended judgment, on the expiration of Mattina's life estate, to Thomas, Jr.'s, heirs at law. The amended judgment as so modified is to be effective as of May 31, 1999.

The case was submitted on a statement of agreed facts and legal issues, which may be summarized as follows. Thomas E. Proctor, Sr. (Thomas, Sr.), died on December 7, 1894, leaving

---

[4]The appellees are the Rices; the Neil Rices; the female middle name Proctors; and Henry B. Scott, Gregory K. Scott, Peter E. Scott, and other minors and unascertained and unborn issue of Thomas E. Proctor, Sr. (Thomas, Sr.), by their guardian ad litem. Only the Rices, Mattina Proctor (Mattina) and the male middle name Proctors have submitted briefs to this court. The trustees, apparently, have remained neutral throughout the course of these proceedings.

in his will a power of appointment over specified property to his son (Thomas, Jr.). Thomas, Jr., died on March 21, 1949, unmarried and without issue. In his will, dated August 19, 1936 (as amended by two codicils in 1937 and 1947), Thomas, Jr., distributed his own property and exercised the power of appointment granted to him under the will of his father. The three trusts here at issue, the trusts under paragraphs THIRD, FIFTH, and FIFTEENTH, are the only trusts presently in existence under the will of Thomas, Jr. All three are funded solely with property appointed by Thomas, Jr., by exercise of the power of appointment granted to him under his father's will. Paragraph FIFTEENTH is the residuary clause of the will.[5]

Mattina was the life income beneficiary of the trusts created by paragraphs THIRD[6] and FIFTH[7] of the will, as of May 31, 1999. On that date, those trusts terminated by operation of the following language contained in paragraph ELEVENTH of the will:

"If any of the foregoing trusts shall not have theretofore terminated under the provisions of this my will applicable thereto, then such trust shall terminate at the expiration of

---

[5]The paragraph FIFTEENTH trust originally contained no appointive property. In 1947, Thomas, Jr., executed a second codicil to his will (the first is not here involved), amending paragraph EIGHTEENTH to state that he intended by paragraph FIFTEENTH (the residuary clause) completely to exercise all powers of appointment that he had under the will of his father.

[6]The relevant portion of paragraph THIRD established a trust with one quarter of the appointive property for the benefit of Thomas, Jr.'s, nephew, Thomas E. Proctor, Second (Thomas 2d), for life, with remainder in trust to his then living issue. In the event that Thomas 2d died without issue, the trust provided that remainder would go, in trust with income for life, to Thomas, Jr.'s, grandniece, Mattina, and his grandnephew, James Howe Proctor, Second (James 2d), remainder to their issue. Both Thomas 2d and James 2d died without issue. Accordingly, Mattina became the sole life beneficiary of the paragraph THIRD trust. Its terms provide that, if both James 2d and Mattina died without issue, the remainder passes in equal shares "to and among the then living male descendants of [Thomas, Sr.], bearing the name of Proctor."

[7]The relevant portion of paragraph FIFTH established a trust with one-quarter of the appointive property for the benefit of Thomas, Jr.'s, other nephew, John Riker Proctor (John) for life, with remainder in trust to Mattina (John's daughter), and then to her issue, and, in default of her issue, to James 2d (John's son) for life and his issue. The trust provided that, if James 2d had no issue, the remainder shall go "in equal share to and among the then living male descendants of [Thomas, Sr.], bearing the name of Proctor."

twenty-one (21) years from the date of the decease of the last survivor of the descendants of my father and mother [Thomas, Sr., and Emma H. Proctor] who were living at the date of the decease of my father [December 7, 1894]."[8]

Because the last survivor of the descendants of Thomas, Sr., and Emma H. Proctor living at the date of Thomas, Sr.'s, death, was Thomas E.P. Rice, who died May 31, 1978, the termination date specified under paragraph ELEVENTH for the trusts under paragraphs THIRD and FIFTH is May 31, 1999, exactly twenty-one years after the death of Thomas E.P. Rice. Paragraph ELEVENTH specifies that, on such termination, the trust property under the THIRD and FIFTH paragraphs shall be paid "to and among those persons who would have been entitled to take the same if such trust had terminated at such date and pursuant to its terms upon the decease of a specified life beneficiary."

The provision for distribution of the remainder of the paragraph THIRD and FIFTH trusts on their termination is "in equal shares to and among the then living male descendants of [Thomas, Sr.], bearing the name of Proctor." As of May 31, 1999, there were no male descendants of Thomas, Sr., bearing the last name of Proctor. There was one living female descendant (Mattina) bearing the last name of Proctor. There were three living male descendants and six living female descendants bearing the middle name of Proctor.

Paragraph FIFTEENTH established a trust for Thomas, Jr.'s, nephew, John Riker Proctor (John) for life and, after his death,

---

[8]Paragraph ELEVENTH was inserted to avoid a conflict with the rule against perpetuities. That rule is classically defined as the rule that "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." J.C. Gray, Rule Against Perpetuities § 201 (4th ed. 1942). See Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 639 (1938) ("Gray's formulation would be more realistic if it were preceded by the words *Generally speaking* and if the word *vest* were put in quotation marks"). In the context of trusts, the rule governs how long equitable contingent interests may remain unresolved before they must extinguish or be converted into vested interests. In this case, the terms of paragraph ELEVENTH ensured that all interests in Thomas, Sr.'s, appointive property contained in the paragraph THIRD and FIFTH trusts terminated within the perpetuities time limit.

in equal shares to John's two children, James Howe Proctor, Second (James 2d), and Mattina, and all to the survivor for life. If either James 2d or Mattina were deceased, their respective shares of the life estate were to go to their issue, if any. On the death of the last survivor of Thomas, Jr.; John; James 2d; and Mattina, the trust provided that the principal be distributed equally to the then living issue of James 2d and Mattina. John having died in 1969, and James 2d in 1942 (with no issue), the income of the paragraph FIFTEENTH trust currently is distributable to Mattina for her lifetime. Mattina is seventy-four years of age and has no issue. Following her death, in default of any of her issue, the provision for distribution of the remainder of the paragraph FIFTEENTH trust (as under the paragraph THIRD and FIFTH trusts) is "in equal shares to and among the then living male descendants of [Thomas, Sr.], bearing the name of Proctor."

The judge determined, with respect to the paragraph THIRD and FIFTH trusts, that, because there were no male descendants of Thomas, Sr., bearing the last name of Proctor as of the trusts' termination date of May 31, 1999, the remainder interests in the trusts' property lapsed. Accordingly, she ordered the property to be distributed to the heirs of Thomas, Jr., as of May 31, 1999.[9] With respect to the paragraph FIFTEENTH trust, the judge determined that, when Thomas, Jr., died in 1949, Mattina had only a contingent interest in the trust property that was not certain to vest within the perpetuities period. The judge concluded, therefore, that Mattina's life estate in the paragraph FIFTEENTH trust was invalid under the rule against perpetuities.[10] Pursuant to her authority under G. L. c. 184A,

---

[9]No party has challenged on appeal the judge's determination that the paragraph THIRD and FIFTH trust funds should be distributed to Thomas, Jr.'s, heirs determined as of May 31, 1999, as opposed to his heirs as of the date of his death.

[10]Because the power of appointment over the property in the trusts at issue was created well before statutory modifications were enacted to ease the harshness of the traditional rule against perpetuities, the judge properly applied the common-law rule, which was in force until 1954. G. L. c. 184A, inserted by St. 1954, c. 641, § 1. The current rule against perpetuities statute, G. L. c. 184A, as appearing in St. 1989, c. 668, § 1, applies only to property interests created on or after June 30, 1990. St. 1989, c. 668, § 2.

§ 6 (b),[11] the judge ordered reformation of that trust to comport with Thomas, Jr.'s, intended distribution. Accordingly, she ordered that Mattina's life estate be continued in effect until her death, and, on her death, the remainder interest to be distributed outright to the heirs of Thomas, Jr., as of May 31, 1999.

Three sets of claimants have filed briefs in this appeal. They may be identified, and their respective contentions summarized, as follows:

(1) Mattina is the grandniece of Thomas, Jr., and, as stated above, the only living descendant of Thomas, Sr. (she is his great-granddaughter), who bears the last name of Proctor. She contends that, in the absence of any male descendants bearing that last name, it is she who is entitled to the property in the paragraph THIRD and FIFTH trusts, outright and free of trust. Alternatively, she suggests that, if Thomas, Jr., intended distribution only to males "bearing the name of Proctor," the above trusts fail for lack of a specified beneficiary, and the trusts' property, under the doctrine of capture, passes into the residue of his estate, contained in the paragraph FIFTEENTH trust. Her life estate in the latter, Mattina argues, was vested at the time of Thomas, Jr.'s, death, and thus, contrary to the judge's conclusion, does not invoke the rule against perpetuities at all. According to Mattina, her life estate in the paragraph FIFTEENTH trust is valid and, as of May 31, 1999, that trust should include all property from the paragraph THIRD and FIFTH trusts;

(2) James Proctor Morss and Nicholas Emerson Proctor King are two of three living males with the middle name Proctor. They present arguments (through their guardian ad litem) that Thomas, Jr., intended the designation "bearing the name of Proctor" to include male descendants of Thomas, Sr., with the middle name of Proctor. Further, they argue that the perpetuities savings clause in paragraph ELEVENTH should be construed to apply to the appointed property contained in the paragraph FIFTEENTH trust. They urge this court to resolve this case by

---

[11]Judicial reformation of a power of appointment created before G. L. c. 184A's effective date is authorized under G. L. c. 184A, § 6 (b), if done in "the manner that most closely approximates the transferor's manifested plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created."

ordering that the property in all three trusts (in which they claim a one-third interest) be distributed outright to the three living male descendants of Thomas, Sr., whose middle name is Proctor;

(3) Emery Van Daell Rice; Thomas Emerson Proctor Rice, Jr.; and Jane Patricia Rice (Rices) are among the living heirs of Thomas, Jr., as of May 31, 1999. They assert that the judge properly construed the words "bearing the name of Proctor" to apply only to male descendants and, on appeal, agree that the judge properly reformed the paragraph FIFTEENTH trust "in the manner that most closely approximates the transferor's manifested plan of distribution." G. L. c. 184A, § 6 (*b*).

From the rather complex fact pattern emerges four distinct legal issues to be resolved before the trustees may be instructed regarding the proper distribution of the principal of the trusts. They are: (1) whether the words "male descendants . . . bearing the name of Proctor" refer solely to males whose surname is Proctor; (2) whether the terms of paragraph ELEVENTH operate to terminate the paragraph FIFTEENTH trust as of May 31, 1999; (3) if not, whether Mattina's life estate in the paragraph FIFTEENTH trust property is valid under the rule against perpetuities or, alternatively, whether that trust should be reformed in order to continue Mattina's life estate; and (4) whether the property in the paragraph THIRD and FIFTH trusts must be distributed outright or whether it may it be added to the residue of Thomas, Jr.'s, estate, contained in the paragraph FIFTEENTH trust. Because the case was submitted on the basis of a fully stipulated record, we consider the legal issues presented on appeal de novo. See *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974); *Rogers* v. *Attorney Gen.*, 347 Mass. 126, 130-131 (1964); *Hopkins* v. *Hopkins*, 287 Mass. 542, 545 (1934); *Sewall* v. *Elder*, 279 Mass. 473, 476 (1932).

1. We have no difficulty concluding that the bequest to "male descendants of [Thomas, Sr.], bearing the name of Proctor" is limited to males whose surname is Proctor. Our conclusion is based on an examination of the plain meaning of the words "bearing the name," as well as on our determination that Thomas, Jr., intended to describe a class of male beneficiaries who would carry out his father's wish to perpetuate the family

name. We keep in mind that, in construing language in a will, "[t]he fundamental object . . . is to ascertain the testator's intention from the whole instrument, attributing due weight to all its language, considered in light of the circumstances known to the testator at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." *Flannery* v. *McNamara*, 432 Mass. 665, 667-668 (2000), quoting *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974). See *Clymer* v. *Mayo*, 393 Mass. 754, 769-771 (1985).

(a) There appear to be no cases in Massachusetts that conclusively define the phrase "bearing the name" in the context of a will or trust instrument.[12] Guidance may be found, however, in decisions of this court using that language to refer to circumstances where a testator clearly has sought to perpetuate a family name. Thus, in *Rogers* v. *Attorney Gen.*, *supra*, this court characterized a requirement in a charitable trust provision that an institution be called "The Johnson Home for Aged Women" as a requirement that the home "bear the family name," in reflection of the testatrix's desire "to have the family name perpetuated." *Id.* at 132. Similarly, in *Norris* v. *Loomis*, 215 Mass. 344 (1913), the testatrix left her home in trust for establishment as a home for the aged "to be called The Tabor Home." *Id.* at 345. This court stated, "[t]he testatrix's desire that the Home should bear her name may be accomplished by perpetuating the name 'Tabor' in connection with the framing of a scheme for the administration of the trust." *Id.* at 346.[13]

Decisions from other jurisdictions, cited by the parties, also demonstrate that the use of "bearing the name" in a will or a trust instrument generally carries an expectation that the family

[12]The current version of Black's Law Dictionary 147 (7th ed. 1999) defines the word "bear" as "to support or carry." Definitions contained in The New Webster Encyclopedic Dictionary of the English Language 70 (1952), an edition more closely approximating the age of the language at issue, include "to carry," "to bring forth," and "[to] convey."

[13]This court's use of that language in other contexts is also helpful. For example, in *Rusconi, petitioner*, 341 Mass. 167 (1960), some members of the Rusconi family objected to a petition by other family members to change their surname to Bryan. While concluding that the change of name must be permitted, see *id.* at 169-170, this court nevertheless stated that "[w]e believe that most persons are entirely content, indeed proud, to bear the names which they acquired at birth." *Id.* at 170.

name will be perpetuated by its use as a last name. Considering a bequest to "each and every male child of my sons who shall by birth inherit and bear the name of Earle," the Supreme Court of Pennsylvania stated that the testator was influenced by his "pride in the family name and desire to have that name perpetuated by as many lineal male descendants of the blood and name as possible." *Earle Estate*, 369 Pa. 52, 54, 57 (1951). The Superior Court of the City of New York, in *Dominick* v. *Sayre*, 3 Sand. Ch. 555 (N.Y. Super. Ct. 1850), construed the words "male descendants of my family of the name of Dominick" to mean male descendants of the testator's children "bearing the surname of Dominick." *Id.* at 569-570. See *Walker* v. *Brown*, 36 Ohio App. 463, 468 (1930) ("patent" that nephew must be willing to bear the name of "Charles Dexter" alone); *National Bank of Commerce* v. *Greenberg*, 195 Tenn. 217, 220 (1953) (condition imposed by testator that child's name not be changed violated when name changed from Eleanor Cohen to Eleanor Cohen Greenberg).[14]

(b) The entire will demonstrates Thomas, Jr.'s, intent to concentrate the family wealth in the male bloodlines.[15] In the trusts created by paragraphs THIRD, FOURTH, and FIFTH of his will, Thomas, Jr. (who had no issue), executed the power of appointment over three-fourths of the principal in his father's estate entirely in favor of his only brother's sons' branches of

[14]The decision of *Matter of Gardiner*, 69 N.Y.2d 66 (1986), has been cited as support for the proposition that the bequest was intended for males with Proctor as any part of their name. The Appellate Division had construed the words in a power of appointment "bearing the name Gardiner" to mean "bearing the surname of Gardiner." *Matter of Gardiner*, 113 A.D.2d 651, 653, 663 (N.Y. 1985). The Court of Appeals reasoned that the testator himself had used the words "bearing the surname Gardiner" in another part of his will. *Matter of Gardiner*, 69 N.Y.2d 66, 75 (1986). Because Thomas, Jr., made no separate reference in his will to "the surname of Proctor" or "the last name of Proctor," from which to discern a plain intent that "the name of Proctor" could include a first or middle name, we find the reasoning of that case to be unpersuasive.

[15]The record indicates that the will of Thomas, Sr., also demonstrated concern that the family name be perpetuated. His will left a substantial amount of money to Massachusetts General Hospital for construction of an "asylum for the insane" and provided that "one or more of said buildings shall be known as the 'Proctor Building.'" His will also provided that any property vesting in either Massachusetts General Hospital or Harvard College by virtue of any of its provisions "shall be known as the 'Thomas E. Proctor Fund.'"

the family. One-fourth of the appointive property passed to his brother's daughter's branch, but in default of issue, passed back under the paragraph THIRD trust. It is significant that, although, at the time his will was executed in 1936, three males in the family had Proctor as a middle name, Thomas, Jr., made no mention of these persons in his will.

We conclude that the words "bearing the name of Proctor" connote Thomas, Jr.'s, desire that, in the event that his specific bequests in those trusts failed, the Proctor wealth should be carried on in the family name. The dearth of possible takers at the time of his death in 1949 (the only living male descendants of Thomas, Sr., being his two nephews, Thomas 2d and John, both of whom were without issue), does not persuade us otherwise. At the time Thomas, Jr., executed his will in 1936, he had no reason to doubt that the name of Proctor would carry on. Although Thomas, Jr., himself had no son, his brother, James, had two. Of the two, Thomas 2d, was thirty-eight years of age and John, only thirty-six, already had an eight year old son (James 2d). It is true that, by the time Thomas, Jr., executed his second codicil in 1947, James and James 2d already had died, and so the potential for "male descendants of [Thomas, Sr.], bearing the [last] name of Proctor," theoretically, had been significantly reduced. Thomas, Jr., however, left that language unchanged. There is no evidence in the record, beyond language in his will, to discern his intentions at this point in time with respect to the remainder bequests at issue. We do not find it unreasonable, however, for Thomas, Jr., to have hoped that John (forty-six years of age) or Thomas 2d (forty-eight years of age and married) would yet beget a male heir.[16]

We reject Mattina's claim that, as the only living descendant of Thomas, Sr., with the last name of Proctor, she is entitled to the principal of the paragraph THIRD and FIFTH trusts.[17] The word "male" is unambiguous. In the face of this clear language,

---

[16]It is conceivable that Thomas, Jr., wished to encourage males in his sisters' branches of the family to change their last names to Proctor. See *Goodwin* v. *New England Trust Co.*, 321 Mass. 502, 503 (1947) (testator with no sons conditioned bequests to daughters' sons on their changing their last name to his last name).

[17]The Equal Rights Amendment, suggested to favor the inclusion of female descendants of Thomas, Jr., within the designated category of male

there is no basis to read into the will an implied intent that a female descendant should take the remainder in the absence of male descendants. Doing so would go beyond permissible limits. See *Boston Safe Deposit & Trust Co.* v. *Schmitt,* 349 Mass. 669, 672-673 (1965). "While intent is the lodestar of testamentary construction, it cannot be used to displace what a will has said. Likewise, it cannot be used to supply a missing clause or to permit speculation as to what the testatrix might have intended had she foreseen or contemplated events as they actually turned out, but for which she made no provision." *Schena* v. *Pagliuca,* 9 Mass. App. Ct. 449, 452 (1980).

2. By its express terms, paragraph ELEVENTH applies to the "foregoing trusts" in the will (including the paragraph THIRD and FIFTH trusts), but not to subsequent trusts such as the paragraph FIFTEENTH trust. It cannot, thus, operate to terminate the latter as of May 31, 1999. The judge properly rejected the argument that the use of the word "foregoing" was a scrivener's error. She reasoned that, under the will as originally written in 1936, the paragraph FIFTEENTH trust contained no appointive assets, see note 5, *supra,* and, so, the testator had good reason to treat that trust differently from the trusts under paragraphs THIRD and FIFTH. The judge inferred, correctly in our view, that Thomas, Jr., plainly did not focus on the rule against perpetuities as it related to the paragraph FIFTEENTH trust.[18]

3. We next consider the operation of the rule against

descendants, has no applicability here. See *Powers* v. *Wilkinson,* 399 Mass. 650, 657 n.11 (1987).

[18]In considering the disposal of property subject to a power of appointment, the remoteness limitation of the rule against perpetuities is measured from the time the power is created and not when it is exercised by the donee. See *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 622 (1947); *Minot* v. *Paine,* 230 Mass. 514, 523 (1918). Thomas, Jr., thus, would have known that the perpetuities period with respect to the disposition of the appointive assets contained in the paragraph THIRD and FIFTH trusts would be measured by a life in being at the time of the creation of the power at Thomas, Sr.'s, death in 1894, and not the exercise of the power at his own death. Because the paragraph FIFTEENTH trust was intended to pass only his own nonappointive property, Thomas, Jr., would have expected that trust's termination date, for purposes of the rule against perpetuities, would be measured by his own death and not his father's.

perpetuities on Mattina's life interest in the income of the paragraph FIFTEENTH trust. Under the terms of that trust, Mattina's life estate (and that of her brother, James 2d) was to come into effect on the death of their father, John. At the time the trust was created in 1949, Mattina was ascertained.[19] James 2d had died, leaving no issue. During John's lifetime, there was no event that would extinguish Mattina's life interest in the trust; on John's death, the only condition that would prevent her taking was her own death.

As has been discussed, see note 8, *supra*, the rule against perpetuities places a limit on how long certain types of trusts may continue. The rule, however, only applies to contingent interests that are not certain to vest within the perpetuities period. Further, the rule is against only the remoteness of vesting of an interest and not the remoteness of vesting in possession. See G.G. Bogert, Trusts and Trustees § 213, at 153 (rev. 2d ed. 1979) (rule is "concerned with vesting in interest or ownership, and not with vesting in possession [the right to occupy or enjoy the subject-matter of the transfer]"). In our view, that condition is not the type that would render her interest in the life estate contingent. Although the terms of paragraph FIFTEENTH describing the life estate appear to be conditional (e.g., "all to the survivor;" "if either . . . shall be deceased"), this language adds nothing to the nature of her interest; it merely states the obvious — one may not enjoy possession of a life interest unless one is living. See L.M. Simes & A.F. Smith, Future Interests § 142, at 128-130 (2d ed. 1956) ("If the remainder is for life, the remainderman will enjoy the possession only if he survives the termination of the preceding life estate. Nevertheless the death of the remainderman is not regarded as a condition, but as a limitation of the remainderman's estate. Hence, there being no words of condition, the

---

[19]As stated in note 18, *supra*, the requirements of the rule are satisfied if it appears from the facts and circumstances existent when the appointment is exercised that the required vesting will take effect within the applicable perpetuities period, "although this may not have been certain at the death of the donor of the power." *Minot v. Paine, supra* at 522, citing J.C. Gray, Rule Against Perpetuities §§ 523, 524 (3d ed.).

remainder for life . . . in an ascertained person is vested").[20]
We conclude that Mattina's life estate in the paragraph
FIFTEENTH trust vested in interest, although not in possession,
when the trust was created in 1949. Because vesting in interest
is what matters for purposes of the rule against perpetuities, the
rule is not violated by Mattina's life estate.[21]

We reach this conclusion after consideration of past cases and
numerous authorities on the subject of trusts. In *Minot* v. *Paine*,
230 Mass. 514 (1918), the testatrix, Hannah F. Lee, died in
1865, by her will creating a trust to pay the income for life to
her granddaughter, Julia Bryant, "and on her death to transfer
and convey the same in fee to such persons and on such terms
as [Julia] may direct and appoint." *Id.* at 523. Julia, in her will,
left property (a combination of her own and appointive) in trust
for her husband for life, and, on his death, a certain share to be
set aside and income to be paid to her son, Sumner, for life. On
Sumner's death, Julia's will provided that a portion of the
income be paid to his adopted daughter, Margaret. See *id.* at
523-524. We find relevant the following statement by this court:
"The gift of income to Sumner and to [] Margaret was vested,
although the enjoyment of the latter was postponed until his
decease. This appointment was good, since the rule against

---

[20]The reasoning of this court in *Doggett* v. *New England Trust Co.*, 327
Mass. 167 (1951), illustrates the import of true conditional language: The will
of Stephen H. Williams provided for the distribution of the remainder of his
property, on the termination of successive life estates to his wife and children,
to his living children or their issue and, in default of any then living children
or issue, to his cousins, Alice A. Hobbs and Edith M. Hobbs, if living.
Recognizing that no absolute gift of property was made to either cousin unless
(1) there were no living child or issue of the testator and (2) each cousin
herself was living, the *Doggett* court concluded that the cousins' interests
were contingent only. The court distinguished cases "where there are no
words importing survivorship or where there are simply interests in remainder
preceded by interests of life beneficiaries." *Id.* at 170. Here, had the gift to
Mattina been outright and absolute, instead of a life estate, but only "if liv-
ing," we indeed would agree that no vesting of her interest could take place
until her father's death.

[21]Because we agree with Mattina that her life estate was vested at the time
of its creation, we need not respond to her contention that we should reconsider
this court's holding in *Fiduciary Trust Co.* v. *Mishou*, *supra*, that the
perpetuities time limit for property interests created by the exercise of a power
of appointment runs from the creation of the appointment power, and not from
its exercise.

perpetuities does not apply to such vested gifts." *Id.* at 524. Similarly, the testator in *Seaver* v. *Fitzgerald*, 141 Mass. 401 (1886), bequeathed a lifetime interest in property to his daughter, Annie, and to her children, if any. After Annie's death (or after the death of any child), the property was to pass to the Augustinian Society of Lawrence. This court held that the case presented no perpetuities problem. It reasoned that the "interest vested in the Augustinian Society . . . upon the testator's death, subject to the preceding life estates. All that is required by the rule against perpetuities is, that the estate or interest shall vest within the prescribed period. The right of possession may be postponed longer." *Id.* at 403.

As explained by the author of one treatise, "if a fee owner dies leaving a will by which he creates a trust for A and his successors to last for twenty-five years, remainder to B (a person living at that time), the rule is not involved because the interest of B is vested at once as far as ownership is concerned, and the fact that he will not come into the enjoyment of the property until the lapse of twenty-five years is immaterial. There is no contingent interest involved." G.G. Bogert, Trusts and Trustees, *supra* at § 213, at 153. See L.M. Simes & A.F. Smith, Future Interests, *supra* at § 137, at 118 ("it is not the certainty of the taking effect in possession which makes [an interest] vested but the certainty of the right to possession"); A.W. Scott & W.F. Fratcher, Trusts § 62.10, at 330 (4th ed. 1987) ("the rule against perpetuities deals with remoteness of vesting and not with the duration of vested interests").

Even assuming a measure of ambiguity in the matter, our preference for avoiding a perpetuities problem by construing an interest, where possible, as vested rather than contingent, resolves any uncertainty. See *Childs* v. *Sherman*, 351 Mass. 450, 454-455 (1966); *Old Colony Trust Co.* v. *Clemons*, 332 Mass. 535, 539 (1955). The general doctrine of favoring construction to avoid the rule against perpetuities was well established at the time of Thomas, Jr.'s, death. Indeed, almost one century ago, in the case of *Gray* v. *Whittemore*, 192 Mass. 367 (1906), this court concluded that certain remainders vested "at the decease of [each of the testator's children], though the right of present possession was postponed in each case until the

expiration of an intervening life estate [of the children's surviving spouses]." *Id.* at 377. The *Gray* court stated: "Not only is this construction in accord with the manifest intent of the testator and effectual to accomplish the object which he had in view, but the opposite construction 'would defeat that purpose, by creating a perpetuity which the law would not sustain. In such a case, the court is bound to adopt that construction which will sustain the will and effectuate the objects of the testator.' " *Id.* at 378-379, quoting *Loring* v. *Blake*, 98 Mass. 253, 260 (1867).

In any case, there is no disagreement that the remainder interest stated in paragraph FIFTEENTH is void under the rule against perpetuities. Under the terms of the trust at the time it was created, potential beneficiaries of the remainder interest, to be identified at the death of the last survivor of Thomas, Jr.; John; James 2d; and Mattina, were living issue of Mattina, living issue of James 2d, or, alternatively, living male descendants of Thomas, Sr., bearing the name of Proctor. Because there was no way to predict in 1949, nor was it certain to be known, within the applicable perpetuities period, which of the above contingent beneficiaries, if indeed any at all, would ultimately qualify to take the principal of the paragraph FIFTEENTH trust, that remainder interest violates the rule against perpetuities. This determination, however, does nothing to alter the validity of Mattina's life estate. See *Amerige* v. *Attorney Gen.*, 324 Mass. 648, 656 (1949); *Greenough* v. *Osgood*, 235 Mass. 235, 242 (1920).

4. The parties agree that, if Thomas, Jr.'s, appointment of his father's property under the paragraph THIRD and FIFTH trusts is incomplete for lack of a beneficiary (as it is), the trusts lapse and the principal therein passes by resulting trust into the estate of Thomas, Jr. Under the doctrine of capture, "where the donee of a general power attempts to make an appointment that fails, but where, nevertheless, the donee has manifested an intent wholly to withdraw the appointive property from the operation of the instrument creating the power for all purposes and not merely for the purposes of the invalid appointment, the attempted appointment will commonly be effective to the extent of causing the appointive property to be taken out of the original instrument and to become in effect part of the estate of the

donee of the power." *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 624 (1947). See *Dunbar* v. *Hammond*, 234 Mass. 554, 557 (1920). The application of this doctrine "captures" the property that is the subject of the power and makes it part of the donee's estate. See *Fiduciary Trust Co.* v. *Mishou*, *supra*. In this case, the rule directs that, on termination of the paragraph THIRD and FIFTH trusts, the trust principal passes, by way of a resulting trust, into the residue of Thomas, Jr.'s, estate and becomes part of the res of the paragraph FIFTEENTH trust.

Contrary to what the judge concluded in her memorandum of decision on the trustees' complaint, there is no perpetuities infirmity that would make this result impermissible. The origin of our disagreement is the judge's determination that Mattina's interest in the paragraph FIFTEENTH trust was contingent and, because it was not certain to vest within the perpetuities period, her current life estate in that trust was invalid. On that basis, the judge concluded (incorrectly) that the assets of the paragraph THIRD and FIFTH trusts could not pass into the paragraph FIFTEENTH trust. The judge reasoned, that to augment property in a life estate (in her view) void for remoteness under the rule against perpetuities, by the addition of assets from trusts terminated expressly to avoid the operation of the rule, would itself be impermissible under the rule. See *Porotta* v. *Fiduciary Trust Co.*, 321 Mass. 638, 641 (1947); *Fiduciary Trust Co.* v. *Mishou*, *supra* at 626-627. Because we reach a different conclusion with respect to the nature of Mattina's life estate in the paragraph FIFTEENTH trust, we see no obstacle presented by the rule against perpetuities, or otherwise, to prevent the assets of the paragraph THIRD and FIFTH trusts from passing, by way of resulting trust, into the residue of Thomas, Jr.'s, estate contained in the paragraph FIFTEENTH trust.

5. The judge's reformation of the paragraph FIFTEENTH trust, as reflected in part 3 and 4 of the amended judgment entered in the Probate and Family Court, to continue Mattina's life estate in effect until her death, and, on her death, to distribute the remainder of the paragraph FIFTEENTH trust outright to the heirs of Thomas, Jr., is entirely consistent with the result we reach. There appears to be agreement among the parties that the amended judgment accurately directs distribu-

tion of the paragraph FIFTEENTH trust to Thomas, Jr.'s, heirs, as of May 31, 1999, and sets forth the correct proportional interests of each.

Part 2 of the amended judgment is vacated, and part 1 of the amended judgment is vacated and replaced by the following: the life estates in the paragraph THIRD and FIFTH trusts, having terminated under the terms of paragraph ELEVENTH on May 31, 1999, the remainders of said trusts are added, as of that date, to the residuary trust of Thomas, Jr.'s, estate created by paragraph FIFTEENTH. Parts 3, 4, and 5 of the amended judgment are affirmed.[22]

*So ordered.*

---

[22]Costs and expenses on appeal are in the discretion of the Probate and Family Court.