NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-560                                        Appeals Court

COMMONWEALTH  vs.  MICHAEL RILEY.

No. 13-P-560.

Norfolk.     April 4, 2014. - September 19, 2014.

Present:  Graham, Wolohojian, & Milkey, JJ.


Constitutional Law, Public trial.  Practice, Criminal, Public
     trial, New trial.



     Indictments found and returned in the Superior Court
Department on September 7, 2005.

     The case was tried before Barbara A. Dortch-Okara, J., and
a motion for a new trial was considered by her.

     Following review by this court, 77 Mass. App. Ct. 1102
(2010), a motion for a new trial was heard by Kenneth J.
Fishman, J.


     Joanne T. Petito for the defendant.
     Tracey A. Cusick, Assistant District Attorney, for the
Commonwealth.


     WOLOHOJIAN, J.  The defendant appeals from the denial of

his motion for new trial, contending that his right to a public

trial under the Sixth Amendment to the United States

Constitution was violated when a court officer prevented the defendant's sister from entering the courtroom because "the lawyers were talking to the judge." This occurred on the morning of the first day of trial -- but before the trial began. The motion judge found that the sister was turned away when the court was not in session. Although the parties have asked us to determine whether the defendant's Sixth Amendment right was violated in the circumstances presented, we need not reach that question because we determine that, even were we to assume the defendant's right was infringed, he has not shown that he is entitled to a new trial. We accordingly affirm.

The motion judge, after an evidentiary hearing,[1] made the following written findings.

> "The defendant's case was called for trial on November 13, 2007. The defendant's sister Ayges, arrived at Dedham Superior Court at around 9:00 a.m. on the first day of her brother's trial. Ayges went through court security and was directed to the courtroom where her brother's trial was to take place. When she approached the courtroom, Ayges observed that the courtroom door was open. She saw many people waiting outside of the courtroom, including one person she recognized as the victim's grandmother. When

---

[1] This is the second time that the defendant's motion for new trial has come before us. The first time, we vacated the order denying the motion and remanded the case for reconsideration in light of Commonwealth v. Cohen (No. 1), 456 Mass. 94 (2010). See Commonwealth v. Riley, 77 Mass. App. Ct. 1102 (2010). On remand, the motion was denied a second time, after a different judge conducted an evidentiary hearing, made detailed findings, and undertook a close analysis of the law. It is from this second denial of his motion that the defendant appeals.

Ayges peered into the courtroom, she saw her brother, the defendant, and lawyers standing next to the bench, talking to the judge.  She did not see anyone else in the courtroom; it was otherwise empty.[2]  Accordingly, the defendant's sister did not see a court reporter, any court officers, any witnesses, or the defendant's parents in the courtroom.

"Moreover, the record reflects that the defendant was in custody during the trial.  This Court finds based on a review of the transcript of proceedings on the morning of November 13, 2007, and based on its knowledge of Courtroom 25 at the Norfolk Superior Courthouse where these proceedings were held, as well as its experience with and knowledge of the process of hearings in criminal cases, that it is highly unlikely that the defendant would be standing next to the bench with counsel and the judge during the hearing on pretrial motions, and particularly without the presence of security officers.

"When Ayges attempted to gain entry into the courtroom, she was stopped by a court officer.  He asked her whether she was a potential juror or witness, to which she responded that she was the defendant's sister.  The court officer told her that she could not enter the courtroom because 'the lawyers were talking to the judge.' The court officer did not tell Ayges that she would be allowed in the courtroom at another time.  The defendant maintains that the court officer was Larry Sullivan based on the description provided by Ayges and Sullivan's general assignment to Judge Dortch-Okara.  The transcript of proceedings reveals that Sullivan was in the courtroom during the initial proceedings, and accordingly, could not have been the officer with whom Ayges spoke if the court

---

[2] In a footnote, the judge stated:  "Ayges did not specify how many lawyers she observed in the courtroom in either her affidavit or her testimony at the evidentiary hearing.  Attorney Hernon's affidavit states that Ayges told her that she saw a lawyer standing at the bench.  In addition, although Ayges stated that, when she sought entry into the courtroom, the courtroom door was open, Chief Court Officer Bellotti testified that the courtroom door is typically closed when court is in session.  This Court credits Ayges' testimony that she made observations through an open door, but, for the reasons stated herein, [finds] that the court was not in session at the time."

were in session.  Ayges left the courthouse after the court officer denied her entry into the courtroom.  She estimated spending roughly thirty minutes at the courthouse that morning.  Once she left, Ayges did not return to the courthouse at any point during her brother's trial.

"Attorney Hernon represented the defendant at trial. She testified that she did not learn of Ayges' exclusion from the courtroom on the morning of November 13, 2007, until after the trial concluded.  Attorney Hernon first learned that Ayges attempted to attend her brother's trial during a phone conversation with Ayges on November 28, 2007.  During that conversation, Ayges told Attorney Hernon that she went to the courtroom where her brother's trial was scheduled to take place, and saw a lawyer standing at the judge's bench, whom, based on Ayges' description, Attorney Hernon recognized as Assistant District Attorney Courtney Linnehan.

"The trial transcript reveals that the first order of business on the morning of November 13, 2007, was several pretrial motions, including motions in limine.  Jury empanelment did not begin until later that afternoon, after the luncheon recess.  Although Ayges states that she did not see any spectators in the courtroom when she attempted to enter, the trial transcript indicates that the victim's parents were present in the courtroom at the onset of the Court's consideration of pretrial motions.  Indeed, defense counsel moved to sequester witnesses before the Court addressed the parties' motions in limine, stating on the record that witnesses were currently present in the courtroom.  The Court, however, did not order the witnesses to leave the courtroom during the hearing on these non-evidentiary motions.  Accordingly, this Court finds that at the time the defendant's sister made her observations inside Courtroom 25, the court was not in session."

The defendant challenges as clearly erroneous the judge's finding that court was not in session when his sister was turned away.  Essentially, he argues that the court must have been in session given the finding that the trial judge was on the bench and was speaking to the lawyers with the defendant present.

Because it is clear that the motion judge credited the sister's testimony that the judge was on the bench and talking to the lawyers, there would be some tension if one were to read the phrase "not in session" to mean that nothing at all was occurring in court.  However, looking at the findings as a whole, as well as the evidence upon which they are based, we think it unreasonable to conclude that the judge meant the phrase in that way.  Instead, consistent with his other findings, it is apparent that the judge used the phrase "not in session" to mean that the discussion with counsel took place before the pretrial motion hearing began and was administrative in nature, with no transcript or reporter being required.[3]

Where, as here, a judge's findings of fact are made after an evidentiary hearing on a motion for new trial, they "will be accepted if supported by the record."  Commonwealth v. Rosario, 460 Mass. 181, 195 (2011), quoting from Commonwealth v. Walker, 443 Mass. 213, 224 (2005).  See Commonwealth v. Buckman, 461 Mass. 24, 29 (2011), citing Commonwealth v. Cohen (No. 1), 456 Mass. 94, 105 (2010) (Cohen [No. 1]).  The judge's finding is fully supported here.  The sister testified that no one was

---

[3] Although there is no indication in the record as to what the discussion might have concerned, it is certainly not unusual for a judge to discuss a matter of timing (for example, the timing of the arrival of the clerk or the reporter) without the court being in session.

present in the courtroom other than the two lawyers, the defendant, and the judge. The lawyers were standing at sidebar with the defendant standing behind them to the side. By contrast, the transcript of the hearing on the motions in limine reveals that witnesses and court personnel were present in the courtroom and that the argument took place in open court, not at sidebar.

Regardless of whether the defendant's sister was turned away during the pretrial motion hearing (as the defendant contends) or during a sidebar conference before the motion hearing began (as the judge found), the defendant has not shown that the proceeding was of a nature to which the Sixth Amendment public trial right attaches. Although the United States Supreme Court has held that the Sixth Amendment right extends to certain pretrial proceedings, see Waller v. Georgia, 467 U.S. 39, 43 (1984) (Waller) (suppression hearings), and Presley v. Georgia, 558 U.S. 209, 213 (2010) (jury voir dire), it has not held that it attaches to all pretrial proceedings.[4] To determine whether a

---

[4] Only a few Federal appellate decisions have considered the issue. See Rovinsky v. McKaskle, 722 F.2d 197, 199-201 (5th Cir. 1984) (Sixth Amendment right attaches to hearings on motions in limine heard during course of trial); United States v. Norris, 780 F.2d 1207, 1209-1211 (5th Cir. 1986) (Sixth Amendment right does not attach to bench and lobby conferences concerning administrative matters); United States v. Vazquez-Botet, 532 F.3d 37, 51-52 (1st Cir. 2008) (looking to its purpose and function, no Sixth Amendment public trial right to pretrial offer-of-proof hearing at issue); United States v.

particular pretrial proceeding is one to which the Sixth Amendment public trial right attaches, the inquiry "cannot be resolved solely on the label we give the event" but rather must be based on "considerations of experience and logic." Press-Enterprise Co. v. Superior Ct., 478 U.S. 1, 7, 9 (1986). "First, because a 'tradition of accessibility implies the favorable judgment of experience,' we [are to consider] whether the place and process have historically been open to the press and general public. . . . Second, [we are to consider] whether public access plays a significant positive role in the functioning of the particular process in question." Id. at 8 (citations omitted).[5]

Even were we to assume that the Sixth Amendment public trial right attached in the circumstances presented and that the partial closure did not satisfy the four-part Waller test,[6] the

---

Waters, 627 F.3d 345, 359-361 (9th Cir. 2010) (public trial right attaches to hearing on motions in limine).

[5] Press-Enterprise Co. v. Superior Ct., supra, is a public access case based on the First Amendment to the United States Constitution. However, the United States Supreme Court has stated that "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public," Waller, supra at 46, and has held that under the Sixth Amendment any closure must meet the tests set out in Press-Enterprise Co. Id. at 47.

[6] "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting

defendant's motion for new trial was nonetheless properly denied because he has not shown that the appropriate remedy would be a new trial. "The relief for a breach of the public trial right 'should be appropriate to the violation.'" Cohen (No. 1), 456 Mass. at 119, quoting from Waller, 467 U.S. at 50.

We have found no case where a new trial has been ordered where the unconstitutional closure occurred solely during a pretrial motion hearing.[7] Instead, possible remedies are either to conduct a new public hearing on the motion or to publicly release the transcript of the hearing. See Waller, supra at 49-50 (remanding for public suppression hearing on those portions of hearing that need not be closed); United States v. Waters, 627 F.3d 345, 361 (9th Cir. 2010) (noting public trial right may

_____

disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care." Waller, 467 U.S. at 45. "That 'determination must satisfy four requirements articulated by the Supreme Court: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."'" Cohen (No. 1), 456 Mass. at 107, quoting from Commonwealth v. Martin, 417 Mass. 187, 194 (1994).

[7] In Washington v. Heath, 150 Wash. App. 121, 128-129 (2009), the court reversed the defendant's convictions because the courtroom was closed for certain motions in limine as well portions of jury voir dire. In Rovinsky v. McKaskle, 722 F.2d 197, 199 (5th Cir. 1984), convictions were reversed where motions in limine, although filed pretrial, were heard in chambers during trial.

have been vindicated by public availability of transcript).  See also <u>Robinson</u> v. <u>Commonwealth</u>, 445 Mass. 280,290 (2005) (if defendant had good cause to be absent from suppression hearing and did not waive right to be present, remedy may be to hold another suppression hearing).  Although relief need not necessarily be limited to those two options, it must be tailored to remedy the harm.  A new trial should not be ordered where it "would be a windfall for the defendant, and not in the public interest."  <u>Waller</u>, <u>supra</u> at 50.

Here, the defendant expressly disclaims any relief other than a new trial.  Even if -- as he contends -- the closure occurred during the hearing on the motions in limine, he has made no effort to show why a new trial would be the appropriate form of relief.  For these reasons, we affirm the denial of the defendant's motion for new trial.

<u>So ordered</u>.