NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1248                                          Appeals Court

CHARLES JAYNES, petitioner.


No. 14-P-1248.

Plymouth.     October 19, 2015. - December 16, 2015.

Present:  Berry, Green, & Blake, JJ.


Name.  Probate Court, Change of name.  Constitutional Law,
    Freedom of religion, Equal protection of laws.  Religion.
    Religious Land Use and Institutionalized Persons Act of
    2000.


    Petition filed in the Plymouth Division of the Probate and
Family Court Department on June 18, 2012.

    The case was heard by Catherine P. Sabaitis, J.


    Charles Jaynes, pro se.
    Michael Adam Chinman for Robert Lee Curley.


    BLAKE, J.  On June 18, 2012, Charles Jaynes filed a

petition pursuant to G. L. c. 210, § 12, to change his name,[1]

citing in support of his request his "Wiccan religious tenets."

After a hearing, a judge of the Probate and Family Court denied

_____

    [1] His desired name is Manasseh-Invictus Auric Thutmose V.

the petition.  On appeal, Jaynes argues that the judge abused her discretion and that the denial violates the free exercise clause of the First Amendment and the equal protection clause of the Fourteenth Amendment to the United States Constitution; art. 2 of the Massachusetts Declaration of Rights; art. 46 of the Amendments to the Massachusetts Constitution; and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc et seq. (2012).  We affirm.

1.  Background.  Jaynes is currently serving a life sentence, with the possibility of parole, for the 1997 kidnapping and second degree murder of a ten year old boy.  See Commonwealth v. Jaynes, 55 Mass. App. Ct. 301 (2002).  After Jaynes filed his petition, an order entered requiring notice by publication.  Following publication in a local newspaper, nine individuals filed affidavits of objection; three of those persons also filed appearances in the matter.  One of those three was the victim's father.

On November 20, 2012, a hearing was held, at which Jaynes testified that "my old heathen name is religiously offensive. It is also spiritually debilitating due to the fact that God and Jesus Christ had given me a new name."  Based on his testimony,[2] the judge found that a name change is not essential to Jaynes's

_____

[2] Jaynes was the only witness who testified on his behalf.

Wiccan faith. Jaynes does not challenge this finding on appeal.[3] The victim's father, his counsel Michael Chinman, and two of the other nine objectors spoke in opposition. The victim's father briefly described the crimes Jaynes had committed and noted Jaynes's prior use of aliases and the number of outstanding warrants he had when he was arrested. Chinman argued that a name change would not be in the public interest, given the seriousness of Jaynes's prior offenses. The additional two objectors echoed that position.

2. Legal standard. An individual has a right, at common law, to freely assume a name of his or her own choosing, "provided that this is done for an honest purpose." Merolevitz, petitioner, 320 Mass. 448, 450 (1946), and cases cited. General Laws c. 210, § 12, was enacted in furtherance of this right, to allow a petitioner to secure an "official record which definitely and specifically establishes his change of name." Verrill, petitioner, 40 Mass. App. Ct. 34, 35-36 (1996), quoting from Buyarsky, petitioner, 322 Mass. 335, 338 (1948). It provides that "[t]he change of name of a person shall be granted unless such change is inconsistent with public interests." G. L. c. 210, § 12, as amended by St. 1977, c. 869, § 3.

---

[3] Jaynes testified that his request for a name change is to further his relationship with God.

Therefore, the right to change one's name through the legal process is not absolute.

When a prisoner's right to a name change is at issue, the public interests at stake are heightened, particularly if the prisoner may be paroled in the future. In Verrill, petitioner, supra, this court was presented with a very similar set of facts to the ones present here; the petitioner was a prisoner facing possible parole, with a record of convictions of murder and kidnapping. We affirmed the probate judge's denial of the petition, as "granting the petitioner a name change would likely cause significant confusion in the criminal justice system if he were ever released . . . [and] would not be in the public interest if the petitioner were able later to elude criminal prosecution and conceal his identity." Id. at 37.

3. Public interests. The judge found that Jaynes's requested name change is "inconsistent with public interests." In support of this finding, the judge cited his use of multiple aliases prior to his most recent incarceration, the number of warrants he had outstanding at the time of his arrest (at least sixty), the serious nature of his convictions,[4] and his

---

[4] Jaynes was convicted for his role in killing the victim with a gasoline-soaked rag. After the killing, Jaynes and Salvatore Sicari placed the victim's body in a container with cement and dumped it in a river in Maine. See Commonwealth v. Jaynes, 55 Mass. App. Ct. at 302-303.

eligibility for parole after serving fifteen years.  The judge opined that Jaynes's petition for a name change could cause confusion in the various departments of the criminal justice system and that the accuracy and consistency of such records is in the public interest.

"[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Here, the judge's analysis is on all fours with Verrill, petitioner, supra; there was no abuse of discretion.

4.  Free exercise of religion.  In making a free exercise claim, it is the plaintiff's initial burden to demonstrate that the "right to freely exercise his religious beliefs has been burdened."  Rasheed v. Commissioner of Correction, 446 Mass. 463, 472 (2006).  The degree of burden necessary to trigger a further analysis of the judge's justification for her decision must be "substantial."  Curtis v. School Comm. of Falmouth, 420 Mass. 749, 761 (1995).  In other words, "[the] burden must be more than a perceived or hypothetical one.  It must have a tendency to coerce an individual into acting 'contrary to [his] religious beliefs.'"  Rasheed v. Commissioner of Correction,

supra at 473, quoting from Attorney Gen. v. Desilets, 418 Mass. 316, 324 (1994).

Thus, in order to proceed on his free exercise claim, Jaynes must make a threshold showing that changing one's name is an important component of the Wiccan religion, and that, absent such a change, he would be limited in the exercise of his religious beliefs.[5] This he has failed to do. At the hearing, Jaynes provided a first-person narrative describing the origins of his chosen new name, how several Biblical characters changed their names during the course of their relationship with God, and how he, similarly, would like to use the new name God has provided him. Jaynes did not describe, however, any tenets of the Wiccan religion beyond the existence of certain deities; how he, specifically, goes about his religious practice; or how a denial of his petition would hinder the exercise of his Wiccan faith. Nor does he challenge the judge's finding that "although name changes are encouraged, they are not essential under his Wiccan religion."

5. Equal protection of the law. A claim under the equal protection clause requires that Jaynes show that (1) in comparison with others similarly situated, he was selectively

_____

[5] We note that the petitioner in Verrill, petitioner, asserted no claim based upon his right to free exercise of religion. See id. at 36 & n.4.

treated and (2) that "such selective treatment was based on impermissible considerations such as race, religion, . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." DuPont v. Commissioner of Correction, 448 Mass. 389, 398-399 (2007), quoting from Cote-Whitacre v. Department of Pub. Health, 446 Mass. 350, 376 (2006).  To meet this burden, Jaynes must "first 'identify and relate specific instances where persons situated similarly "in all relevant aspects" were treated differently, instances which have the capacity to demonstrate that [he was] "singled . . . out for unlawful oppression."'" Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995), quoting from Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).  Having failed to identify any other prisoners similarly situated to himself "in all relevant aspects," e.g., other prisoners convicted of violent crimes with extensive criminal histories, including the use of aliases, who may be paroled in the future and who sought and received name changes, Jaynes fails to meet this threshold requirement.  Accordingly, this claim also fails as a matter of law.

6.  RLUIPA.[6]  As the judge's decision passes muster under the Massachusetts Constitution, it necessarily meets the

---

[6] The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1(a) (2012) (RIULPA), provides that:

requirements of RLUIPA.  See <u>Ahmad</u> v. <u>Department of Correction</u>, 446 Mass. 479, 485 (2006) ("While RLUIPA holds the government to a higher standard than that required [by <u>Turner</u> v. <u>Safley</u>, 482 U.S. 78 (1987)], with respect to the free exercise of religion . . . that standard is consistent with the stricter standard we adopted [under the Massachusetts Constitution] in <u>Rasheed</u> v. <u>Commissioner of Correction</u>, <u>supra</u> at 472-475").  No further analysis is required.

<u>Decree denying petition for</u><br><u>name change affirmed</u>.

---

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."