The petitioner is a transgender woman who was convicted of murder in the first degree by extreme atrocity or cruelty, G. L. c. 265, § 1,[2] as well as disseminating matter harmful to a minor, G. L. c. 272, § 28.[3] She is currently serving a sentence on the former conviction of life in prison without the possibility of parole.[4] As part of her transition from male to female, the petitioner filed a pro se petition in the Probate and Family Court under G. L. c. 210, § 12, seeking to change her name to feminize it. That statute provides that "[t]he change of name of a person shall be granted unless such change is inconsistent with public interests." G. L. c. 210, § 12, as appearing in St. 1977, c. 869, § 3. General Laws c. 210, § 13, as amended through St. 1966, c. 342, § 1, provides that "[t]he court shall, before decreeing a change of name, request a report from the commissioner of probation on the person filing the petition and, except for good cause shown, require public notice of the petition to be given and any person may be heard thereon."
An order entered in the Probate and Family Court requiring that notice be given by mail to the Attorney General of the Commonwealth, the Commissioner of Probation, the Executive Office of Public Safety and Security of the Department of Correction, the Sex Offender Registry Board, the Plymouth County sheriff's office, the Plymouth County district attorney's office, and the petitioner's then-wife, Carolyn Riley. Of those notified parties, only the Plymouth County district attorney's office filed an objection and made an appearance.[5] The Norfolk County district attorney's office also filed an objection and made an appearance.
At an evidentiary hearing on the matter, the petitioner argued not only that her change of name was not inconsistent with public interest, but also that other transgender inmates housed where she is housed, at the Massachusetts Correctional Institution at Norfolk, had been permitted legally to change their names, and that a denial of her petition would violate equal protection.
In reliance on our decision in Verrill, petitioner, 40 Mass. App. Ct. 34 (1996) (Verrill ), a judge of the Probate and Family Court denied the petition for name change. There we wrote that "confusion in the criminal justice system and, more particularly in its record keeping is ... a 'wrongful consequence[ ]' [of a name change] and ... granting a name change to an inmate will likely result in such confusion." Id. at 36. The judge concluded that there was a risk of such confusion in this case, and denied the petition. The judge did not address the equal protection claim raised by the petitioner. The petitioner has appealed.
Discussion. The statutory right to change one's name is exceedingly broad, see Rusconi, petitioner, 341 Mass. 167, 170 (1960), imbued as the choice of name is with constitutional overtones. See Secretary of the Commonwealth v. City Clerk of Lowell, 373 Mass. 178, 185 (1977) (Noting that it has "been authoritatively advised that freedom of personal choice in matters of family life is one of the liberties protected by the due process clause of the Fourteenth Amendment, and that there is a private realm of family life which the State cannot enter," the court ruled that traditional rules of naming could not be imposed upon married persons, divorced persons, or parents seeking to name their children). Of course, as Verrill makes clear, that right is not absolute, and there may be aspects of conviction and incarceration that affect the calculation of the public interest in the case of a prisoner seeking a name change that are not present in the case of an individual who is free. See Verrill, supra at 35-36.
With respect to the statutory question, it appears to us that the judge properly followed Verrill. During the pendency of this appeal, however, we decided Jaynes, petitioner, 88 Mass. App. Ct. 745 (2015) (Jaynes ). This decision clarified the standard articulated in Verrill. In Jaynes we said, "[w]hen a prisoner's right to a name change is at issue, the public interests at stake are heightened, particularly if the prisoner may be paroled in the future." Id. at 747. The negative implication is that where parole is not available, a judge's assessment of the public interest must take account of the reduced-even if not absolutely eliminated-likelihood of release.
Although the judge did discuss the risk of confusion in the criminal justice system in light of the various avenues by which the defendant might one day be released, he did so without the benefit of our teaching in Jaynes. While it may or may not make any difference to the statutory calculus, something we do not decide, we think the prudent course in light of Jaynes is to vacate the decree denying the petition for name change and remand the case for reconsideration in light of our subsequent decision. We note that the proper assessment requires the judge to weigh the petitioner's reasons for seeking the name change as well as broader societal interests. See Verrill, 40 Mass. App. Ct. at 37 (describing the lower court's approach). The examination of the public interest does not eliminate, but requires, consideration of the interests served for the individual by the change of name. Cf. Petition of Two Minors for Change of Name, 25 Mass. App. Ct. 941 (1988) (statutory public interest standard does not replace but incorporates assessment of best interest of child seeking name change).[6]
With respect to the equal protection claim that the judge below did not address, the offices of the district attorneys for Norfolk and Plymouth Counties argue that it was waived. The procedure for petitioning for change of name in the Probate and Family Court is quite informal. It is instituted by filling out a preprinted form. Presumably because many such petitions elicit no objection, the form itself contains a line for the judge to decree the name change. In this case, after the pro se inmate petitioner filed her petition form, the offices of the district attorneys for Norfolk and Plymouth Counties filed their objections. At the next available opportunity, the hearing, the pro se inmate raised her equal protection claim. In the circumstances, we conclude that the equal protection claim was not waived, although neither the facts nor the legal arguments were fleshed out below. Since there must in any event be a remand in this case, the parties may address the equal protection claim on remand should they so choose.
The decree denying the petition for name change is vacated, and the case is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Vacated and remanded.

See Commonwealth v. Riley, 467 Mass. 799 (2014).

See Commonwealth v. Riley, 86 Mass. App. Ct. 309 (2014), cert. denied, 135 S. Ct. 1858 (2015).

Because the petitioner is a transgender woman, we use the female pronoun, as is the practice in our courts. See, e.g., Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 361 n.4 (2014).

The petitioner's then-wife also objected to the petitioner changing her name prior to the finality of their divorce. That divorce is now final, and the petitioner's former wife did not appear at the hearing nor has she filed any further documents or renewed her objection.

Although the offices of the district attorneys for Norfolk and Plymouth Counties objected to the name change on grounds of risk of confusion, there was no objection from the Commissioner of Probation, the Department of Correction, the Sex Offender Registry Board, or the Plymouth County sheriff's office. In Verrill, the conclusion that the name change "would likely cause significant confusion in the criminal justice system if [the petitioner] were ever released," id. at 37, was based upon filings by the Department of Correction and the Massachusetts Parole Board stating "that many of their records are housed in different facilities and are not accessible by computer. Therefore, a name change may not be properly recorded and accurate record keeping would be seriously compromised." Id. at 37 n.5.
On remand, given that the petitioner is now represented by counsel, the parties may fruitfully explore whether this two-decade old assessment remains accurate today. There may be some relevance as well to the manner in which the criminal justice system deals with prisoners' name changes that are not the result of proceedings under G. L. c. 210, § 12 ; for example, those attendant upon marriage or divorce. See, e.g., G. L. c. 46, § 1D, inserted by St. 1977, c. 869, § 2 ("Each party to a marriage may adopt any surname, including but not limited to the present or birth-given surname of either party, may retain or resume use of a present or birth-given surname, or may adopt any hyphenated combination thereof"); G. L. c. 208, § 23, as amended by St. 1973, c. 379 ("The court granting a divorce may allow a woman to resume her maiden name or that of a former husband"). We note that the concern raised by the Plymouth County district attorney's office about the inability to find a formerly incarcerated individual in the absence of actual notice of the name change is absent here, where that office has such notice.